[Civ. No. 54273. Second Dist., Div. Two. Oct. 30, 1979]

WENDY J. J. WHITTON et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Boccardo, Lull, Niland & Bell and Edward J. Niland for Plaintiffs and Appellants.

McDonald, Harmon & Granieri and George McDonald for Defendants and Respondents.

OPINION

BEACH, J.—Wendy J. J. Whitton (appellant) and her father, Frank Whitton, sued the State of California for personal injuries sustained by Wendy and for damage to her father's car in an accident that occurred January 12, 1975. Wendy had been pulled over by California Highway Patrol (CHP) officers for speeding. A drunken driver (McKay) later hit the CHP vehicle from the rear, and Wendy ended up pinned between her own vehicle and the CHP vehicle. Her location and that of the CHP officers prior to the impact by the drunken driver elicited much contradictory testimony at trial. The jury entered a verdict for defendant State of California. Wendy appeals from the judgment and from the trial court's denial of her motion for judgment notwithstanding the verdict.[1]

FACTS:

Appellant and Charmaine Severe were on their way to an acquaintance's home after attending a Linda Ronstadt concert in Santa Barbara. CHP Officers Fix and Hunt observed them speeding on Highway 101; Officer Hunt estimated that appellant was driving 65 miles per hour at one point. The CHP vehicle displayed red lights; appellant

---

[1] By stipulation at trial, the parties agreed to proceed as if Wendy were the sole plaintiff and the State of California the sole defendant.

pulled off the highway onto the improved shoulder; and the CHP vehicle stopped approximately 15 feet behind her. The positioning of the vehicles and the alleged lack of lighting on the Highway Patrol vehicle were urged as bases of finding respondent negligent at trial. On appeal, however, those grounds are not discussed; appellant relies only on her contention that the officers put her person physically in a zone of danger.

Officer Fix talked to appellant about her speeding violation. Officer Hunt called Fix's attention to the bald left rear tire of appellant's vehicle. Officer Fix then went back to appellant and told her about the tire; she said that she knew it was bad but that her dad owned the car and had not gotten around to changing it. At that time Officer Fix detected alcohol on her breath so asked appellant to get out of the car and directed her to the rear of the Volkswagen.

Officer Fix conducted various sobriety tests such as asking appellant to state the alphabet and to count. Appellant did satisfactorily on the tests. Officer Fix was giving appellant directions on how to get to her acquaintance's address when the accident took place. Officers Fix and Hunt testified that at the time of initial impact, appellant was on the dirt side of the road, not between the vehicles on the paved shoulder of the highway.

The drunken driver ran his van into the CHP vehicle at a speed of about 45 to 50 miles per hour.

In the opinion of respondent's collision analyst, Arnold Siegel, the right hand front door of the CHP vehicle, which had been left open for proper police reasons, started to close when the van struck the CHP vehicle. However, the B-post was warped and twisted by the impact so that the door could not close. Instead the door started to swing back rapidly. Officer Fix took the first impact and hit Miss Severe. Fix eventually struck Hunt, knocking Officer Hunt 50-60 feet. The impact caused Officer Fix to go toward the fence; Hunt and Severe to go toward the southwest; and appellant, toward the paved shoulder area. Siegel also testified an alternative, possible sequence was that the door directly struck appellant. It is undisputed that the crash ended with appellant between her own car and the CHP vehicle and she sustained painful, severe injuries.

According to appellant and Miss Severe, appellant was standing between the two cars at the time of impact. Dr. Hahne, appellant's consulting engineer, testified that she could not have been injured in the way she was injured without being between the two cars right before the impact. Mr. Siegel, however, testified that if the accident had occurred in the way appellant claims, she would have sustained more injuries and there would have been imprints on the car.

Valerie Streit, with whom Miss Severe stayed while she was testifying, cast doubts upon Miss Severe's credibility. She testified that Charmaine Severe's air fare was partly paid by appellant's attorney, while Charmaine Severe testified that she believed her mother paid for her air fare. In addition, she testified that appellant told her Charmaine would be taken care of until she was 21, would have clothes and a car and would be taken care of with a sum of money from the case. Miss Streit warned Charmaine about perjury, and Charmaine said if she got the right amount of money, she would go along with the story. Charmaine told Miss Streit that her story was so air tight nobody could do anything about it.

## CONTENTIONS ON APPEAL:

1. Since the evidence conclusively established that respondent's agents had placed appellant in a zone of danger, thereby improperly exposing her to a foreseeable risk of harm, the trial court erred in denying appellant's motion for judgment notwithstanding the verdict, and the judgment in favor of respondent is not supported by the evidence and should be reversed.

2. The trial court erred in instructing the jury in terms of BAJI No. 3.13 that it is not negligent to fail to anticipate an accident that can be occasioned only by a violation of law or duty by another person.

3. The trial court erred in instructing the jury in terms of BAJI No. 3.14 on the right to assume normal faculties.

4. The trial court erred in instructing the jury in terms of BAJI No. 5.50 that it is the duty of a pedestrian to exercise ordinary care at all times to avoid placing himself in danger and to use like care to avoid an accident for which injury might result.

DISCUSSION:

1. *Substantial evidence supports the verdict.*

■  Appellant contends that the judgment is not supported by the evidence and therefore she is entitled to judgment notwithstanding the verdict. She argues that the CHP officer has a duty to exercise reasonable care to protect a motorist and that in the case at bench she was placed in a zone of danger by the officers. She does not rely on the principal trial theory that she was placed between the two cars but instead argues that the officers should not have allowed her to stand in the area where the motorist could be injured by any part of the patrol car if the foreseeable rear-end collision took place. We disagree.

Whether the officers acted in a reasonable manner, given the circumstances of the stop in the case at bench, is a question of fact to be decided by the jury. (*Mann v. State of California,* 70 Cal.App.3d 773, 780-781 [139 Cal.Rptr. 82].) The officers need not exercise perfect judgment. Their duty is to perform their official duties in a reasonable manner.

In deciding whether the officers acted reasonably in the case at bench the jury had to consider the several circumstances that affected the performance of that duty. Many of these circumstances were and are beyond the control of the officers. Among them are the following: (1) the location where the traffic offense occurs; (2) the location selected by the motorists for stopping; (3) speeding drivers must be stopped promptly near the place of the traffic infraction. The stop cannot be delayed until an approach to an absolutely safe spot is located; (4) the existence of departmental written guidelines that recommend that stopped female motorists shall be kept close to the more visible open highway and away from the dark areas where there may be obscuring shrubs and bushes; (5) the condition of the roadway to the side of the location; testing of walking and balance usually call for reasonably smooth level surfaces; (6) proper policy procedure requires that patrol car doors be left open to insure quick access to the radio; (7) at a stop such as in this case, certain lighting of the CHP vehicle is required to minimize the "moth effect" i.e., the hazard of attracting other vehicles off the traveled lane; (8) there was uncontradicted expert testimony that it would be negligence to place a person between the two parked vehicles, or to allow her to remain there. Although there was conflicting

evidence as to where plaintiff was standing at the moment of impact, the jury's verdict, finding defendants not negligent, indicates that the jury accepted the substantial evidence that the officers did not place or compel plaintiff to remain between the two cars and that she was not at such position at the moment of the impact. There may be other considerations but the foregoing are a few of the items which the evidence at bench concerned.

The jury received evidence on the conduct of the officers and of these circumstances. The jury found that the officers were not negligent in any respect to plaintiff. As an appellate court, we are bound by that finding if it is supported by substantial evidence. The evidence disclosed that the officers followed departmental rules in stopping, questioning, and testing appellant. There was evidence that the discussion properly took place on the untraveled shoulder of the road and to the side of the parked vehicles. The officers properly followed the departmental rules relative to lighting on the CHP vehicle.

The significance of the jury's finding is that it of necessity reduces appellant's contention here to a narrow claim. The heart, if not the sole basis of that contention is that irrespective of the fact that the jury found on solid and substantial evidence that the officers acted reasonably, there is some sort of absolute liability on the part of the CHP officers because any stop on the shoulder of a highway carries a risk of harm that a drunken driver will crash into the stopped vehicles. This contention seeks nothing less than that California adopt a liability-extending doctrine of "risk in the air." We are not persuaded that this is or should be the law.

It cannot be said that the officers in this case were negligent as a matter of law, simply because they stopped the speeding motorist at this location and inquired as to her driving ability. The fact that a possibility existed that the vehicles might be hit by a drunken driver did not change the situation and create a new responsibility on the part of the officers as insurers of the motorists' safety from drunken drivers.

The fact that a speeding motorist is stopped by a highway patrolman whose duty it is to enforce the vehicular laws does not clothe the motorist with some guarantee that the highway officers will make or can make the place of stop totally free from danger. The relationship of CHP officer and stopped motorist does not impose on the officer a higher duty, such as guardian or guarantor, against a hazard no more

known to occur or foreseeable to the officer than to any other user of the highway. Absent some evidence of the officer's actual knowledge of some history that at that particular place and at that particular time an accident is likely to occur, or that a drunken driver is likely to strike the vehicles, it is unjust to charge the officer with special foreseeability of such events. That hazard is as known to users of the freeways as it is to the officers and cannot be eliminated. Appellant presented no evidence and has demonstrated no reason for such a rule of almost absolute liability.

There was nothing produced in evidence and nothing has been explained here which demonstrates why the fortuitous event of a drunken driver hitting the parked vehicles should make the officer automatically liable. Irrespective of this shortcoming in her case, appellant continues to argue that the drunken driver's collision was foreseeable. This is not the foreseeability upon which the law of negligence is based. The conduct of the respondents was not the cause-in-fact or the substantial factor in law in bringing about the harm to the plaintiff. When the law says a person substantially contributes to the injury, the law is dealing with responsibility based on reasonable expectations and a common-sense approach to fault not physics. (Prosser, Torts (4th ed. 1971) § 44, p. 271; compare *Bigbee* v. *Superior Court,* 93 Cal.App.3d 451 [155 Cal.Rptr. 545].) Therefore, even if the likelihood of being hit while using or being parked at or near a freeway possibly can be calculated in terms of mathematical probabilities, such mathematic computation is immaterial.

*Bigbee* held that a plaintiff pleaded a cause of action by alleging that defendant *knew* or in the exercise of reasonable care *should have known* of the danger to plaintiff of being hit by an automobile driven by a third party even if carelessly driven. By contrast at bench, upon trial appellant produced no evidence that these officers knew or in the exercise of due care should have known of any particular danger of being struck by a drunken driver at this particular location.

In *Schrimscher* v. *Bryson,* 58 Cal.App.3d 660 [130 Cal.Rptr. 125], we held that the subsequent act of a drunken driver (third party) striking the CHP vehicle parked off the shoulder and injuring the highway patrol officer, was an intervening act to the antecedent negligence of the defendant who originally caused the officer to be at that location. At bench the only conduct to which appellant now points as constituting

negligence by the officers, is the claim that the officers should have foreseen that a drunken driver might hit the parked vehicle. As we explained in *Schrimscher* v. *Bryson, supra,* such conduct is not as a matter of law reasonably foreseeable. The drunken driver's "conduct, which itself was criminal in nature, was not a natural or ordinary consequence of the situation created by defendant nor was the foreseeability of the likelihood of that conduct one of the factors contributing to the negligent character of defendant's conduct." (*Schrimscher* v. *Bryson, supra,* at pp. 664-665.) Comparison of that case to the one at bench illustrates the need to apply the same rule here. There the injured officer was denied recovery. Yet he was performing his lawful duty. He had stopped to investigate an accident caused by the negligent driving of the first motorist. To deny the officer the right to recover when he is injured in the performance of his duty, but on the other hand to impose liability on the officer for anyone else who might be hurt under the same circumstances not only would be unfair but would make shambles of whatever small measure of guidance remains in the doctrine of duty in the field of tort law.

In summary, when an officer stops a motorist on the shoulder of the highway and allows the motorist to remain in or near the area, such officer is not negligent simply because there is a possibility that a drunken driver might collide with such vehicles parked on the shoulder and off the traveled lane. All possibilities of risk even if "foreseeable" in the abstract as possibilities cannot be eliminated. There was no evidence in the case at bench that any of the risks to plaintiff, and which are common to all users of the public area, was increased by any negligent conduct on the part of respondent. Negligence seldom, if ever, is a pure question of law. It most always is a question of fact to be determined by the fact finder, here the jury. The jury here found in favor of defendants. The trial court did not err in denying the motion for judgment notwithstanding the verdict.

2. *The trial court did not err in instructing the jury in terms of BAJI No. 3.13.*

■ Appellant contends that the trial court erred in instructing the jury pursuant to BAJI No. 3.13, which provides: "Every person who, himself, is exercising ordinary care, has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such

a person to fail to anticipate an accident which can be occasioned only by a violation of law or duty by another person." The instruction was originally requested by both appellant and respondent but was later withdrawn by appellant.

Appellant contends that this instruction was misleading, confusing and improper in that the jury could then believe the officers were not negligent in failing to anticipate McKay's drunken behavior even though there was a great deal of testimony regarding the foreseeability of that type of risk. Appellant relies on cases such as *Levy-Zentner Co. v. Southern Pac. Transportation Co.,* 74 Cal.App.3d 762, 780-782 [142 Cal.Rptr. 1], which involved foreseeability of unlawful behavior.

The giving of instruction BAJI No. 3.13 was not error. It was a correct statement of the law applicable to the facts in evidence. Appellant's arguments relative to this instruction are but a variation on her theme of foreseeability of the drunken driver's act. Our discussion above applies here and in effect answers appellant's contentions.

The jury instruction applies to two aspects of the officers' duty towards appellant. (1) They must exercise ordinary care in their conduct, and (2) they must not have any reasonable cause to believe an accident will likely occur absent the misconduct of some third person. The second part of the instruction is a form of describing the rule of foreseeability.

We have explained earlier in this opinion that there is no duty to foresee a collision occasioned by the criminal conduct of a third party drunken driver. Thus there is no threshold question whether the failure to anticipate such act is a failure to "exercise ordinary care." It is not. Additionally, there was ample evidence that the officers' conduct at the scene was reasonable, based on evidence of the standards established by the department and also based on common sense ideas of how persons should act to avoid harm under such circumstances. Therefore, neither officer could be automatically deprived of the benefit of having his conduct tested under the instruction. The evidence disclosed that both officers fit the description of a "person who himself is exercising ordinary care." As such the evidence disclosed they were entitled to the benefit of the law as contained in the instruction and were entitled to have the jury so informed. They were entitled to assume the reasonable safety of the scene of the traffic stop even though an accident could

possibly occur but was not likely or probable unless some third party violated the law.

The second part of the instruction did not foreclose appellant from presenting and having considered any evidence which she might have had concerning the actual knowledge or reasonable opportunity of the officers to learn facts which would lead them to believe that an accident would happen at that scene. The real heart of appellant's problem is that she produced no evidence of such facts known to the officers. In this respect the case at bench differs entirely from *Levy-Zentner*.

■ Instructions are proper where there is evidence which, if believed by the jury, applies to the set of facts recited in such instruction and will support the giving of such instruction. The language of *Levy-Zentner Co., v. Southern Pac. Transportation Co., supra,* 74 Cal.App.3d 762, does not apply to the facts of the case at bench. The holding of *Levy-Zentner* must be restricted to the type of facts present in *Levy-Zentner*. If there is evidence on both sides of the question as to whether the conduct of a third person is or is not foreseeable, the jury instruction is correct. Its application or effect will depend on the finding of the jury as to whether the act of the third person should have been anticipated or foreseen. *Levy-Zentner* does not hold that BAJI No. 3.13 is inappropriate to a case such as that at bench. *Levy-Zentner* merely held that the refusal to give BAJI No. 3.13 was not in error in that particular case because the instruction was inappropriate in light of the unrefuted evidence that there defendants foresaw the specific acts of the third persons. There the defendants knew that hoboes and transients and other trespassers had misused defendants' premises and that defendants knew of the dangerous condition that existed at their premises and that the dangerous condition created a high risk of fire. There was uncontroverted evidence of a combination of knowledge of the dangerous condition, knowledge of the continued trespass and misuse of the premises and the dangerous conditions, and failure to correct the condition, although having the opportunity to do so. All of this combined in *Levy-Zentner* to convince the appellate court that giving the instruction would have been inappropriate because unsupported by any evidence of defendants' lack of knowledge of the past and continuing unlawful acts of the third party. Irrespective of the strong dictum therein that BAJI No. 3.13 should not have been given, we read *Levy-Zentner* as holding only that in that particular case the failure to give the instruction was not prejudicial error under the facts disclosed by the evidence.

3. *The trial court did not err in instructing in terms of BAJI No. 3.14.*

■ Appellant contends that the trial court erred in instructing the jury pursuant to BAJI No. 3.14, which provides: "In the absence of reasonable cause for thinking otherwise, a person who himself is exercising ordinary care has a right to assume that other persons are ordinarily intelligent and possessed of normal sight and hearing." Appellant contends that this instruction magnifies the alleged error in instructing with BAJI No. 3.13. We disagree and hold the giving of this instruction was proper. Our discussion relative to BAJI No. 3.13 applies to this.

In addition, this instruction, as well as BAJI No. 5.50 which we discuss below, applies equally to the conduct of both appellant and respondents. It relates to what the law says they may expect relative to the conduct of each other as well as the conduct of the third party.

4. *The trial court did not err in instructing the jury in terms of BAJI No. 5.50.*

■ Appellant's final contention is that the trial court erred in instructing in terms of BAJI No. 5.50, which provides: "It is the duty of every person using a public street or highway, whether as a pedestrian or as a driver of a vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to use like care to avoid an accident from which an injury might result." Appellant states that the Use Note to BAJI No. 5.50 provides that the instruction is designed for use where the negligence of a driver and a pedestrian are at issue, not where the negligence of only the driver is an issue. She contends that there is no evidence to support her own negligence and that she was not a "pedestrian" in the sense contemplated by BAJI No. 5.50.

While use notes may help, they are not necessarily controlling. The use of the particular instruction may have been intended and therefore tailored to cases involving pedestrians. However, nothing therein is so complex or inapplicable to the facts and circumstances at bench as to make it confusing. The instruction can well apply to the conduct of either plaintiff or defendant at a scene of an accident during the time that both are walking about the scene of the accident or the stop as well as when one is a vehicle driver and the other a pedestrian. Although it may not have been necessary to reach this instruction, the instruction

was proper as it refers and applies to plaintiff's own conduct at a time when she was either standing or moving about the scene of the stop. Whether she was free to act or to move about on her own initiative or whether she was a captive at a particular site or place of danger, was a question of fact for the jury to determine. Similarly, whether she had any freedom to ask or suggest a move to a safer location, if any, was also a question of fact which the jury might have had to reach. The instruction was applicable to plaintiff's own conduct if the jury had been required to reach that question.

If appellant is concerned about contributory negligence and that there was no evidence thereof relative to her conduct, this point is moot. The special jury verdict found the patrolmen were not negligent. Therefore, the jury never reached the issue of appellant's own possible contributory negligence. In any event, appellant's own trial counsel requested several instructions that involved the concept of contributory negligence. Appellant can hardly complain of instructions on contributory negligence when her attorney requested instructions on that same theory. (*Bates* v. *Newman,* 121 Cal.App.2d 800, 808 [264 P.2d 197].) We need not decide whether there was evidence of contributory negligence. Appellant's counsel in effect agreed that contributory negligence was an issue.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied November 29, 1979, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied January 17, 1980. Bird, C. J., was of the opinion that the petition should be granted.