[No. C013093. Third Dist. July 12, 1993.]

FRANCES MARIE JACKSON, Individually and as Special Administrator, etc., et al., Plaintiffs and Appellants, v.
RYDER TRUCK RENTAL, INC., Defendant and Respondent.

**COUNSEL**

Bolling, Walter & Gawthrop, T. D. Bolling, Jr., and Marjorie E. Manning for Plaintiffs and Appellants.

Matheny, Poidmore & Sears, Douglas A. Sears and Michael A. Bishop for Defendant and Respondent.

**OPINION**

**SIMS, Acting P. J.**—Plaintiffs Frances Marie Jackson, individually and as special administrator, etc., et al., appeal from a summary judgment in favor

of defendant Ryder Truck Rental, Inc. (Ryder) in plaintiffs' lawsuit for wrongful death. We shall reverse the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts.*

Stated most favorably to plaintiffs, evidence adduced upon the motion for summary judgment showed the following:

The decedent, Loren Jackson, was an employee of S. B. Thomas Company (Thomas). On August 26, 1985, he was working as a relief driver servicing Thomas customers in Sacramento. Ryder had exclusive responsibility under contract with Thomas for inspection, preventive maintenance, service, and repair of Thomas vehicles in Sacramento. The Thomas employee who normally drove the truck used by the decedent had experienced many problems with the truck's electrical system and had reported those problems to Ryder, but electrical failures had persisted up to the date of the accident.

In the early morning hours of August 26, 1985, when it was still dark, the decedent pulled off eastbound Highway 50 onto the shoulder. After he got out of the truck, while standing on the shoulder about four feet south of the fog line, he was struck and seriously injured by a car driven by Valerie Ferra. Both decedent and Ferra were found unconscious when rescuers arrived at the accident scene. The California Highway Patrol officer who inspected the truck at the scene found its electrical system was completely inoperable.

The investigating officer found no evidence that Ferra had braked or attempted to take evasive action before the accident, indicating that she may have fallen asleep at the wheel. The officer opined that Ferra was speeding at the time of the accident.

The decedent died several months after the accident. Ferra survived, but suffered a complete memory loss as to the accident.

The history of repairs on the truck indicated the battery had been replaced five times in two years, during which time the vehicle had been driven only 30,000 miles. Plaintiffs' expert testified in deposition the vehicle was "eating batteries." The expert stated, "It appears to me that there was a long-standing electrical problem in this van which had not been adequately addressed. It seems like they were repairing or replacing parts, but not really fixing the problem, whatever it was."

B. *Procedure.*

Plaintiffs, decedent's widow and children, filed this action for negligent wrongful death in February 1986.

In January 1992, Ryder moved for summary judgment on four separate grounds: (1) that the evidence showed no negligent maintenance of the truck; (2) that Ryder's duty to use due care did not extend to the risk encountered by the decedent because Ferra's conduct was not foreseeable; (3) that Ryder's conduct was not the proximate cause of the accident because it was Ferra's conduct which actually injured the decedent; and (4) that Ryder was not liable for the decedent's death because Ferra's conduct was an intervening, superseding cause of the collision.

At the hearing on the motion, the trial court stated, "We assume [Ryder is] negligent. I mean, that's a given." The trial court concluded Ryder's negligence was not a proximate cause of the accident. The trial court thereupon entered judgment dismissing plaintiffs' complaint. This appeal followed.

DISCUSSION

I

*Standard of Review*

A motion for summary judgment is properly granted if the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ██ If summary judgment was properly granted on any ground, we must affirm regardless of whether the court's reasoning was correct. (*Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 407-408 [266 Cal.Rptr. 34].)

██ We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) The moving party bears the burden of proving that the claims of the adverse party are entirely without merit on any legal theory. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134].) The opposition must demonstrate only the existence of at least one triable issue of fact (*AARTS, supra,* 179 Cal.App.3d at p. 1065), and all doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

## II

### *Negligent Maintenance of the Truck*

At various points in its brief, Ryder asserts there was no evidence showing it negligently maintained the subject truck, or that the negligence caused the truck to pull off the freeway.

This argument is not well taken.

In determining the propriety of a motion for summary judgment, we are to consider "all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc. § 437c, subd. (c).)

Here, the evidence recounted above indicated the truck had experienced repeated electrical problems that had not been adequately fixed. This evidence is sufficient to show Ryder negligently maintained the truck. Moreover, the history of electrical problems, plus the fact that the truck's electrical system was found totally inoperable at the scene of the accident, permit the reasonable inference that the truck pulled off the freeway because it was disabled by electrical failure. Ryder's contentions to the contrary are without merit.

## III

### *Duty*

We turn to the question of whether, in the circumstances, Ryder owed plaintiffs' decedent a duty of care.

"Actionable negligence is traditionally regarded as involving the following: (a) a *legal duty* to use due care; (b) a *breach* of such legal duty; (c) the breach as the *proximate or legal cause* of the resulting injury." (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60, and cases cited.) "Under the duty approach [to negligence], conduct is negligent when it creates an unreasonable risk of harm to some *general class of persons*. If the plaintiff is not within that class toward whom the defendant is negligent, the injury does not give rise to liability. (See Rest.2d, Torts § 281." (6 Witkin, *op. cit. supra*, § 733, p. 61.)

". . . [E]very case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being

injured as the result of their conduct." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; Civ. Code, § 1714.) Exceptions to this rule may be justified only by clear public policy. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

"While breach of duty and proximate cause normally present factual questions, the existence of a legal duty in a given factual situation is a question of law for the courts to determine. [Citation.]" (*Andrews* v. *Wells* (1988) 204 Cal.App.3d 533, 538 [251 Cal.Rptr. 344].)

"As Witkin notes, '[t]he "legal duty" of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated[;] (b) [a]n affirmative duty where the person occupies a particular relationship to others. In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm.' (6 Witkin, [Summary of Cal. Law, *op. cit. supra*, Torts], § 732, p. 61; citations omitted.) Thus, in considering whether a person had a legal duty in a particular factual situation, a distinction must be made between claims of liability based upon misfeasance and those based upon nonfeasance. 'Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. . . . [L]iability for nonfeasance is largely limited to those circumstances in which some special relationship can be established. If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care . . . .' (*Weirum*, [*supra*,] 15 Cal.3d [at p.] 49 []; see also *Clarke* v. *Hoek* [1985] 174 Cal.App.3d [208,] 215-216.)" (*Andrews, supra*, 204 Cal.App.3d at pp. 538-539.)

Here, Ryder does not dispute that it owed a duty of ordinary care as an independent contractor to maintain Thomas's trucks in a condition reasonably safe for driving, and that the decedent, a Thomas employee who drove those trucks, belonged to the class of persons to whom Ryder owed that duty. (Rest.2d Torts, § 403; 6 Witkin, Summary of Cal. Law, *op. cit. supra*, Torts, § 949, p. 333, and cases cited.) However, Ryder denies that this duty extended so far as to render it liable to the decedent under these circumstances. In Ryder's view, it had no duty either to protect the decedent against Ferra's allegedly unforeseeable conduct or to control that conduct in the absence of a special relationship between Ryder and the decedent. Ryder is mistaken.

In determining whether the defendant owed a duty of due care to the plaintiff in a given case, the courts have applied the balancing test derived

from *Rowland* v. *Christian, supra,* 69 Cal.2d at page 113: ". . . [T]he major [considerations] are the foreseeability of harm to the plaintiff, the degree of certainty the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." As we explain, each of these factors tells in favor of finding that Ryder owed a duty of due care to protect the decedent from the type of risk he actually encountered.

### A. *Foreseeability of harm to the plaintiff.*

In deciding the question of foreseeability in the context of legal duty, "a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)

Here, the question of foreseeability is settled by the decision of our Supreme Court in *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49 [192 Cal.Rptr. 857, 665 P.2d 947].

In *Bigbee,* the plaintiff was injured, according to his complaint, when an automobile driven by a drunk driver in the early morning hours veered off the road and struck the telephone booth in which he was standing. The booth was located in a parking lot 15 feet from the side of a major thoroughfare and near a driveway, and evidence was presented that a previous booth at the same location had been struck similarly. The trial court granted summary judgment for the defendant telephone company, which had installed the booth at that location—apparently on the ground that the accident which occurred was unforeseeable as a matter of law.[1] (34 Cal.3d at pp. 52-55.)

The Supreme Court reversed. Stating the key question as whether the risk that a car might crash into the phone booth and injure plaintiff was reasonably foreseeable, the court went on to cite the rule that foreseeability is a

---

[1]In recounting the procedural history of the case, the Supreme Court states that the parties argued the issues of duty and proximate cause at the hearing on the summary judgment motion, but does not specify whether the trial court expressly based its ruling on one or the other issue. (*Bigbee, supra,* 34 Cal.3d. at p. 55.) As we explain, the Supreme Court presents the dispositive question as one of foreseeability, whether considered under the heading of duty or of "proximate cause."

jury question unless the undisputed facts leave no room for a reasonable difference of opinion. (*Bigbee, supra,* 34 Cal.3d at p. 56.) The court further explained: " '[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct.' . . . One may be held accountable for creating even ' "the risk of a slight possibility of injury if a reasonably prudent person would not do so.' " . . . Moreover, it is settled that what is required to be foreseeable is the general character of the event or harm—e.g., being struck by a car while standing in a phone booth—not its precise nature or manner of occurrence." (*Id.* at pp. 57-58, citations omitted.)

Applying these rules, the court found not only that the risk which caused the plaintiff's injury was not unforeseeable as a matter of law, but that "in light of the circumstances of modern life, it seems evident that a jury could reasonably find that defendants should have foreseen the possibility of the very accident which actually occurred here. *Swift traffic on a major thoroughfare late at night is to be expected. Regrettably, so too are intoxicated drivers. [Citation.] Moreover, it is not uncommon for speeding and/or intoxicated drivers to lose control of their cars and crash into poles, buildings or whatever else may be standing alongside the road they travel—no matter how straight and level that road may be.*" (*Bigbee, supra,* 34 Cal.3d at p. 58, italics added; accord, *Bloomberg* v. *Interinsurance Exchange* (1984) 162 Cal.App.3d 571, 576-577 [207 Cal.Rptr. 853].)

Finally, the court rejected the argument that the defendant was excused from liability because the plaintiff's harm came about through the driver's negligent or reckless acts: " 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act *whether innocent, negligent, intentionally tortious, or criminal* does not prevent the actor from being liable for harm caused thereby.' " (*Bigbee, supra,* 34 Cal.3d at p. 58, quoting Rest.2d Torts, § 449, italics added.)

 Here, as in *Bigbee,* the defendant is alleged to have negligently placed the victim in a position in which he was exposed to the danger of an intoxicated or otherwise out-of-control driver veering off course on a highway in darkness and crashing into whatever lay in her path. (34 Cal.3d at p. 58.) *Bigbee* holds that such a danger is a reasonably foreseeable consequence of the defendant's negligence. (*Ibid.*)

Ryder makes no argument that *Bigbee* is inapposite or that it should be limited to its facts. We conclude *Bigbee* controls here.

Arguing to the contrary, Ryder asserts in reliance on *Kane* v. *Hartford Accident & Indemnity Co.* (1979) 98 Cal.App.3d 350, 355-357 [159 Cal.Rptr. 446]: "Foreseeability of the risk *actually encountered* is [necessary to a finding of duty]." (Italics added.) In Ryder's view, under this rule it was not reasonably foreseeable that the decedent would be struck by an errant vehicle "while standing on the shoulder of the roadway four feet inside the fog line." This ultra-specific manner of defining "the risk actually encountered" is not supported by *Kane* itself; therefore, Ryder's reliance on *Kane* is misplaced.

In *Kane*, the plaintiff was raped on the premises of a hospital by an employee of an independent contractor which provided services to the hospital. The plaintiff alleged liability against the defendant, the insurer which bonded the employee, on the grounds that if the defendant had investigated the employee's background with due care, it would have discovered that he had an extensive record of *property-related* crimes, including burglary, theft, and robbery; had it discovered this fact, defendant would not have bonded the employee and the hospital would not have hired him. (98 Cal.App.3d at pp. 352-354.) The reviewing court, upholding a judgment of nonsuit for the defendant, reasoned that the defendant could not have determined by any investigation that its employee represented a threat of physical harm to anyone—it would have discovered that "the foreseeable risk, if any, was for property-related crimes, not violent crimes to persons." (*Kane, supra,* 98 Cal.App.3d at p. 357.)[2] In other words, the court in *Kane* described the risk which was reasonably foreseeable as a matter of law as a "particular kind of harm," i.e., property-related crimes (*Ballard, supra,* 41 Cal.3d at p. 573, fn. 6), and held that the risk actually encountered by the plaintiff was not within that foreseeable *class* of harms. Had the plaintiff suffered theft or robbery at the employee's hands, such a risk would have been foreseeable under *Kane* even if the perpetrator had not carried out his crime in exactly the same manner as he had committed the same crime before. By the same token, the precise details of the decedent's accident in the present case are not dispositive in deciding whether the harm he suffered was reasonably foreseeable as a matter of law under a duty analysis.

Ryder further asserts, relying mainly on *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23] and its progeny, that it had no duty to protect the decedent against the risk he encountered because it could not control the conduct of the third party who injured him and was under no duty to do so absent a special relationship with him, which plaintiffs have not alleged.

[2]Given that robbery, which the employee had committed, is a violent crime against the person, the court's conclusion on this point seems not entirely sound; however, this oversight does not detract from the validity of the court's general analysis.

This argument wrongly presumes that plaintiffs seek to ground Ryder's liability on mere nonfeasance or inaction, whereas in reality plaintiffs allege *malfeasance*, an affirmative act which exposed the decedent to the risk he encountered. This distinction renders the cases Ryder relies on inapposite.

The Supreme Court explained the malfeasance-nonfeasance distinction and its implications in *Weirum* v. *RKO General, Inc., supra*: "Defendant, relying upon the rule stated in section 315 of the Restatement Second of Torts, urges that it owed no duty of care to decedent. The section provides that, absent a special relationship, an actor is under no duty to control the conduct of third parties. . . . [*T*]*his rule has no application if the plaintiff's complaint . . . is grounded upon an affirmative act of defendant which created an undue risk of harm.* [¶] The rule stated in section 315 is merely a refinement of the general principle embodied in section 314 that one is not obligated to act as a 'good samaritan.' . . . This doctrine is rooted in the common law distinction between action and inaction, or misfeasance and nonfeasance. Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. *As section 315 illustrates, liability for nonfeasance is largely limited to those circumstances in which some special relationship can be established. If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care . . . .* [¶] *. . . [Where] [l]iability is not predicated upon defendant's failure to intervene for the benefit of decedent but rather upon its creation of an unreasonable risk of harm to him . . . [,] . . . reliance upon cases which involve the failure to prevent harm to another is . . . misplaced . . . .*" (15 Cal.3d at pp. 48-49, italics added and citations and fn. omitted.)

Here, as in *Weirum*, defendant's reliance on the special-relationship rule to assert that it had no duty to control the conduct of the third party who injured the decedent is misplaced. Plaintiffs did not need to assert the existence of a special relationship between Ryder and the decedent because plaintiffs' theory of liability is grounded on Ryder's alleged misfeasance (creating the risk to the decedent and making his position worse by causing him to drive an unsafe vehicle likely to break down on the highway), not on nonfeasance. Accordingly, the question of liability turns on the ordinary duty of due care, not on the existence of a special relationship.

*Richards* v. *Stanley, supra*, 43 Cal.2d 60, and its progeny address the "key-in-the-ignition" problem: when a car owner leaves the keys in the ignition, allowing a thief to steal the car, and the thief harms a third person while driving, is the owner liable in tort to the victim of the thief's negligent

driving? *Richards* and most of the subsequent cases have held that the car owner owed no duty to protect the victim against this particular risk. (*Richards, supra,* 43 Cal.2d at pp. 65-66; *Avis Rent a Car System, Inc.* v. *Superior Court* (1993) 12 Cal.App.4th 221 [15 Cal.Rptr.2d 711]; *Archer* v. *Sybert* (1985) 167 Cal.App.3d 722, 729-730 [213 Cal.Rptr. 486]; *Kiick* v. *Levias* (1980) 113 Cal.App.3d 399, 404-406 [169 Cal.Rptr. 859]; *Hosking* v. *San Pedro Marine, Inc.* (1979) 98 Cal.App.3d 98, 104-106 and fn. 4 [159 Cal.Rptr. 369]; *Brooker* v. *El Encino Co.* (1963) 216 Cal.App.2d 598, 602 [31 Cal.Rptr. 24]; *Holder* v. *Reber* (1956) 146 Cal.App.2d 557, 560 [304 P.2d 204]; but see *Richardson* v. *Ham* (1955) 44 Cal.2d 772, 776 [285 P.2d 269] [unattended *bulldozer* foreseeably attracted unauthorized and un-skilled operators]; *Hergenrether* v. *East* (1964) 61 Cal.2d 440, 445-446 [39 Cal.Rptr. 4, 393 P.2d 164] [unattended *truck* left overnight in high-crime neighborhood "unusual invitation to theft" by untrained operators]; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 186 [203 Cal.Rptr. 626, 681 P.2d 893] [same]; *Ballard* v. *Uribe, supra,* 41 Cal.3d at pp. 572-573 ["aerial manlift" foreseeably misused by unskilled employee].)

Even assuming the holding of *Richards* is still good law (see *Ballard, supra,* 41 Cal.3d at p. 572, fn. 5, and pp. 585-586; *Palma, supra,* 36 Cal.3d at p. 186, fn. 13; *Archer, supra,* 167 Cal.App.3d at pp. 729-730; *Kiick, supra,* 113 Cal.App.3d at pp. 404-406), the *Richards* rule is inapposite here. In the standard *Richards* situation the car owner's negligence is minimal, a moment's inattention. Moreover, it is not the failure to perform a duty of care owed to a particular person or class of persons known to the defendant. In addition, the link between this negligence and the victim's harm is truly "remote and tenuous," as the court made clear in *Richards*: "In the present case Mrs. Stanley did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it . . . , nor did she leave it in charge of an intoxicated passenger . . . . By leaving the key in her car she at most increased the risk that it might be stolen. Even if she should have foreseen the theft, she had no reason to believe that the thief would be an incompetent driver. In view of the fact that the risk of negligent driving she created was less than the risk she might intentionally have created without negligence by entrusting her car to another, and in light of the rule that she owed no duty to protect plaintiff from harm resulting from the activities of third persons [absent a special relationship between the parties], we conclude that her duty to exercise reasonable care in the management of her automobile did not encompass a duty to protect plaintiff from the negligent driving of a thief." (43 Cal.2d at p. 66, citations omitted.)

By contrast, here Ryder is accused of negligently failing to perform a specific duty owed to the decedent, a form of negligence which foreseeably

exposed him to the very kind of risk he encountered. This conduct does not much resemble that of the defendant in *Richards*. Thus *Richards* and its progeny do not help Ryder.

B. *The closeness of the connection between the defendant's negligence and the victim's harm.*

As the discussion above has suggested, this factor counts in plaintiffs' favor when the nature of the risk the decedent encountered is correctly defined. Ryder argues vainly to the contrary by asserting its lack of negligence (a contention we have rejected, *ante*) and by reiterating its overly specific characterization of the risk which caused the decedent's harm. Ryder also relies on *Baldwin v. Zoradi* (1981) 123 Cal.App.3d 275 [176 Cal.Rptr. 809], which likewise does not assist it.

In *Baldwin* the plaintiff, a university student, was injured by a fellow student who had consumed alcohol in his dormitory, then engaged in a speed driving contest. The plaintiff sued the trustees of the university and two dormitory advisors on the theory that they were responsible for her injury because they had failed to control the drinking of students living in their dormitories. Since the plaintiff's theory of liability hinged on an allegation of nonfeasance rather than of malfeasance (*Weirum, supra*, 15 Cal.3d at p. 49), the court looked to whether there was any special relationship between the plaintiff and the defendant trustees that imposed on the defendants a duty to protect the plaintiff against harms caused by third persons. (123 Cal.App.3d at p. 281.) Finding none, the court upheld the dismissal of plaintiff's complaint on demurrer. (*Id.* at pp. 290-291.) Since plaintiffs here allege misfeasance rather than nonfeasance, *Baldwin* does not help Ryder.[3]

C. *The moral blame attaching to the defendant's conduct.*

There can be no doubt that if Ryder was negligent as alleged, moral blame would attach to its negligence on these facts. Ryder disputes this premise only by repeating the assertions as to its lack of negligence and the unforeseeability of the decedent's accident which we have already rejected.

---

[3]At oral argument, Ryder asserted that there was too remote a connection between Ryder's conduct and the harm caused the decedent. According to Ryder, there was a delay of five months between Ryder's last work on the electrical system and the accident, which occurred on August 26, 1985. However, plaintiffs' expert testified that Ryder's maintenance and service records show reports of electrical problems as late as July 16, 1985. Moreover, the regular driver of the subject vehicle, Timothy Harmon, drove the subject vehicle until the day before the accident, when the decedent took over as a relief driver. Harmon testified that electrical problems "persisted throughout the time I drove the van." In light of these facts, the connection between Ryder's conduct and harm to the decedent was not too remote to preclude a duty of care.

D. *The policy of preventing future harm.*

Ryder asserts that imposing a duty or finding proximate cause on these facts would cause future harm because it would encourage people to drive aberrantly and injure others if they knew they could spread their liability for such conduct. We cannot agree. Imposing a duty of due care to protect a foreseeable plaintiff against a foreseeable risk does not encourage negligence in third parties, and if negligent third parties are able to "spread" liability to others who have properly incurred it by failing to exercise due care, those others are encouraged to perform their duties with greater care in the future and to insure themselves against the consequences of any future negligence—a result in keeping with the policy of preventing future harm.

E. *The impact on the community and the burden on the defendant from imposing liability.*

Relying on *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492 [147 Cal.Rptr. 898] and *Jamison* v. *Mark C. Bloome Co.* (1980) 112 Cal.App.3d 570 [169 Cal.Rptr. 399], Ryder contends that imposing a duty on it under these facts would intolerably burden it and would produce a result contrary to the desired goal by forcing the automobile maintenance industry to raise its rates prohibitively. Ryder's authorities are inapposite and its prediction of an adverse impact on the community is wholly speculative.

In *Bartell*, *supra*, the court held that the defendant school board had no duty to maintain "virtual round-the-clock supervision or prison-tight security for school premises" (83 Cal.App.3d at p. 500) in order to prevent children from entering school grounds after hours; therefore, the defendant was not liable for the death of plaintiffs' son in a skateboarding accident on a school playground when school was not in session. (83 Cal.App.3d at pp. 496, 500.) Assuming *Bartell* is still good law (but see *Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789, 808, fn. 8 [198 Cal.Rptr. 208]), the court's concern about the danger of "impos[ing] a financial burden which manifestly would impinge on the very educational purposes for which the school exists" (83 Cal.App.3d at p. 500) has no relevance here.

To find that Ryder had a duty to exercise due care to maintain the trucks entrusted to it for that purpose under contract would impose no financial burden that Ryder did not voluntarily assume by seeking out the maintenance contract. Unlike the financial burden described by the court in *Bartell*, the "burden" of which Ryder complains is inherent in its chosen function as a company in the truck maintenance business. We will not presume on the

strength of a speculative assertion in Ryder's appellate brief that Ryder cannot carry out this function with due care unless it raises its rates prohibitively.

In *Jamison, supra,* the court found that defendant automobile servicing company had no duty to protect passersby from slipping and falling on oil which had spilled from storage drums on defendant's premises and leaked onto the sidewalk without defendant's knowledge (presumably due to vandalism by unknown third persons), on the grounds that "To impose liability under the facts of this case would be virtually to make defendant the insurer of the safety of all persons who might be injured by this inherently beneficial activity [storing oil for recycling]. The economic burden thus involved far outweighs the apparent risk." (112 Cal.App.3d at pp. 580-581.) However, in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747], the Supreme Court disapproved the rule, on which *Jamison* relied (112 Cal.App.3d at pp. 578-580), that "in the absence of prior similar incidents, an owner of land is not bound to anticipate the criminal activities of third persons, particularly where the wrongdoer was a complete stranger to both the landowner and the victim . . . ." (*Isaacs, supra,* 38 Cal.3d at p. 125.) The Supreme Court found that this rule misstated the issue of foreseeability, producing "arbitrary results and distinctions" as to what is "prior" and what is "similar," and "erroneously equat-[ing] foreseeability of a particular act with previous occurrences of similar acts"; moreover, it contravened the public policies of preventing future harm and of compensating injured parties. (38 Cal.3d at p. 126.) Since the rationale underlying the result in *Jamison* is thus no longer good law, *Jamison* would not help Ryder even if it were closer on the facts than it is.

Thus, Ryder has offered no compelling argument or authority which would lead us to reject the conclusion that the burden imposed on Ryder by finding a duty on these facts is minimal and that the impact of this finding on the community is beneficial.

In short, application of the *Rowland* v. *Christian* (*supra,* 69 Cal.2d 108) test compels the finding that the general duty of exercising due care toward the decedent to protect him against the type of risk he encountered is properly imposed on Ryder as a matter of law under the facts of this case.

IV

*Causation*

A. *Proximate cause.*

"An essential element of any cause of action for negligence is that the defendant's act or omission was a cause of the plaintiff's injury."

(*Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1057 [1 Cal.Rptr.2d 913, 819 P.2d 872] (dis. opn. of Kennard, J.).)

Traditionally, the law has asked whether defendant's conduct was the "proximate" cause of injury. (*Mitchell, supra,* 54 Cal.3d at pp. 1048-1049.)

Under traditional causation analysis, the concept of proximate cause had two components. First, proximate cause asked the question: was defendant's conduct the cause-in-fact of plaintiff's injury? (*Mitchell, supra,* 54 Cal.3d at p. 1056, dis. opn. of Kennard, J.) This meant: was defendant's conduct a necessary antecedent to plaintiff's injury? (*Maupin* v. *Widling* (1987) 192 Cal.App.3d 568, 573 [237 Cal.Rptr. 521].) Second, "Proximate cause asks the larger, more abstract question: *should* the defendant be held responsible for negligently causing the plaintiff's injury? [Citation.]" (*Ibid.,* italics added.) This second component of proximate cause, which asks a policy question, has been termed the "normative or evaluative element" of proximate cause. (*Mitchell* v. *Gonzales, supra,* 54 Cal.3d at p. 1056 (dis. opn. of Kennard, J.; see also *Evan F.* v. *Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 834-835 [10 Cal.Rptr.2d 748].)

In *Mitchell* v. *Gonzales, supra,* 54 Cal.3d 1041, our Supreme Court recently disapproved the standard proximate cause instruction given the jury—former BAJI No. 3.75.[4] (At p. 1054.) The court adopted a test of causation that asks whether a cause is *a substantial factor* in bringing about injury.[5] (*Mitchell, supra,* 54 Cal.3d at pp. 1051-1052.)

In effecting this change, the court indicated it was intending to affect only the first prong of traditional proximate cause analysis, i.e. whether defendant's act or omission was a cause-in-fact of plaintiff's injury. (*Mitchell, supra,* 54 Cal.3d at p. 1049, fn. 4.) Put differently, the traditional policy-analysis prong of proximate cause is unaffected by the instructional change brought about by *Mitchell.* We correctly assumed as much recently in *Evan F.* v. *Hughson United Methodist Church, supra,* 8 Cal.App.4th at page 835, where we concluded policy considerations prevented defendant's conduct from being the proximate cause of harm to plaintiff.

Although policy analysis remains a part of proximate cause analysis after *Mitchell,* we need not undertake an extensive analysis here. The policies

[4]Former BAJI No. 3.75 provided as follows: "A proximate cause of [injury] [damage] [loss] [or] [harm] is a cause which, in natural and continuous sequence, produces the [injury] [damage] [loss] [or] [harm] and without which the [injury] [damage] [loss] [or] [harm] would not have occurred."

[5]The 1992 revision of BAJI No. 3.76 reflects this change, as follows: "The law defines cause in its own particular way. A cause of [injury] [damage] [loss] [or] [harm] is something that is a substantial factor in bringing about an [injury] [damage] [loss] [or] [harm]."

urged by defendant to thwart a conclusion of proximate cause are the same policies that defendant advanced to negate a duty of care. We have addressed those policies, *ante*, and need not revisit them here.

### B. *Cause-in-fact: Arthur v. Santa Monica Dairy Co.*

 Ryder cites *Arthur* v. *Santa Monica Dairy Co.* (1960) 183 Cal.App.2d 483 [6 Cal.Rptr. 808] as authority for the proposition that because the negligence of the driver who struck the decedent was the "cause in fact" of his injury (see *Mitchell* v. *Gonzales, supra,* 54 Cal.3d at p. 1044, fn. 2), Ryder's own negligence cannot be the legal cause of that injury. Ryder is wrong; *Arthur* does not support its position.

In *Arthur,* the plaintiff was a passenger in a car whose driver, after taking his eyes off the road to look for an item on the car floor, struck a double-parked truck belonging to the defendant company. The reviewing court, upholding a jury verdict for the defendant, held that despite the illegal parking of the truck there was no liability because the evidence at trial proved that the accident would have happened even if the truck had been legally where it was; thus the defendant's negligence did not cause the accident in any sense. (183 Cal.App.2d at pp. 488-490.) Here, by contrast, it cannot be said that the decedent's injury would have happened as it did regardless of Ryder's negligence: without that negligence, he would not have been stranded by the side of a busy highway in the early morning darkness without functioning lights. We conclude that construed most favorably to plaintiff, defendant's conduct was a substantial factor in bringing about plaintiff's injury.

### C. *Intervening and superseding cause.*

 Ryder contends that the negligence of Valerie Ferra, whose vehicle struck decedent, was an intervening and superseding cause which cuts off Ryder's liability as a matter of law.

"Where, subsequent to the defendant's negligent act, an independent intervening force actively operates to produce the injury, the chain of causation may be broken. It is usually said that if the risk of injury might have been reasonably foreseen, the defendant is liable, but that if the independent intervening act is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable, it is a *superseding cause,* and the defendant is not liable. [Citations.]" (6 Witkin, *op. cit. supra,* Torts, § 975, p. 366; see *Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1063-1064 [232 Cal.Rptr. 528, 728 P.2d 1163]; Rest.2d Torts, § 447, p. 478.)

A similar argument was rejected in *Bloomberg* v. *Interinsurance Exchange, supra,* 162 Cal.App.3d 571. The facts of that case are as follows: "Appellants' son Seth was a passenger in a car driven by David Camblin, also 16, on the night of September 20, 1980. While traveling on the Golden State Freeway the car developed engine trouble. Camblin pulled the car onto the shoulder of the road, near a callbox. At approximately 1:30 a.m., he placed a call that was answered by the California Highway Patrol (CHP), who transferred it to the Auto Club. The boys returned to the car to await the Auto Club's emergency assistance. An Auto Club tow truck dispatched at approximately 1:30 a.m. failed to locate the stalled car. About 2:25 a.m., an intoxicated driver crashed into the car, causing injuries to appellants' son that resulted in his death." (*Id.* at p. 574, fn. omitted.)

Plaintiffs sued the Auto Club for wrongful death. In a demurrer, the Auto Club claimed the act of the intoxicated driver was a superseding intervening cause that relieved the club of liability. The Court of Appeal rejected the contention as follows: "Generally, if the risk of injury might have been reasonably foreseen, a defendant is liable. If an independent, intervening act occurs which is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable, it is considered a superseding cause and defendant is not liable. (*Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 199 [ ]; *Sanders* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1977) 65 Cal.App.3d 630, 650 [ ].) Among the possible dangers awaiting stranded motorists is injury or death caused by other drivers. In particular, intoxicated drivers are to be expected late at night. (See *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 154 [ ]; *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58 [ ].) It is 'not uncommon' and therefore foreseeable for intoxicated or speeding drivers to lose control 'and crash into poles, buildings or whatever else may be standing alongside the road they travel . . . .' (*Bigbee, supra,* at p. 58.) Foreseeability of the risk is a question of fact. (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 46.)" (*Bloomberg, supra,* 162 Cal.App.3d at pp. 576- 577.)

*Bloomberg* controls here; the question of foreseeability must go to the jury.

Ryder relies heavily on two cases decided before *Bigbee, supra,* by the same division of a single appellate court—*Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125] and Whitton v. *State of California* (1979) 98 Cal.App.3d 235 [159 Cal.Rptr. 405, 17 A.L.R.4th 886]—as authority for the proposition that the negligence of the driver who ran into the decedent was a superseding cause of his injury. We shall conclude these cases are distinguishable.

Both cases involve accidents on highways which occurred while officers of the California Highway Patrol (CHP), after detaining drivers, were processing their arrests by the roadside. In *Schrimscher* the officer, having arrested a drunk driver, was injured when a second drunk driver's car went out of control, ran off the highway, and struck the officer. (58 Cal.App.3d at pp. 662-663.) In *Whitton* one of the persons detained by the officer suffered injury when an out-of-control driver struck the officer's parked van, near which the victim was standing. (98 Cal.App.3d at pp. 238-240.) In *Schrimscher* the reviewing court affirmed a grant of summary judgment against the injured officer in favor of defendant, drunk driver number one. (58 Cal.App.3d at p. 666.) In *Whitton* the reviewing court affirmed a jury verdict in favor of the defendant State of California, relying exclusively on its own holding in *Schrimscher* as to the issue pertinent here.[6] (98 Cal.App.3d at pp. 241-244.)

### 1. *Schrimscher.*

In affirming the summary judgment against the CHP officer in *Schrimscher*, the court stated two separate rationales. First, the conduct of drunk driver number two was an independent intervening act which broke the chain of causation because it was unforeseeable as a matter of law, because it was "criminal in nature" and "not a natural or ordinary consequence of the situation created by the defendant," and because "the foreseeability of the likelihood of that conduct [was not] one of the factors contributing to the negligent character of defendant's conduct"; thus this conduct was a superseding cause of the officer's injury which relieved defendant of liability. (58 Cal.App.3d at pp. 664-665.)[7] Second, as a matter of policy, persons arrested by traffic officers should not be liable in tort to those officers if, while the officers are performing their ordinary duties, they are injured by the acts of third parties (*id.* at p. 665).

The second rationale is a mere extension of the "firefighter's rule," and was so described both in *Schrimscher* itself (58 Cal.App.3d at p. 665) and in later cases citing Schrimscher. (*Walters* v. *Sloan* (1977) 20 Cal.3d 199, 202-203 [142 Cal.Rptr. 152, 571 P.2d 609]; *Farmer* v. *Union Oil Co.* (1977) 75 Cal.App.3d 42, 46, 53 [141 Cal.Rptr. 848]; see also *Bigbee, supra,* 34

---

[6]Two of the three justices who decided *Schrimscher* were also on the panel in *Whitton.*

[7]In asserting that the foreseeability of an independent intervening act *alone* is "[t]he general test of whether [such an act] breaks the chain of causation," *Schrimscher* relied on *Custodio* v. *Bauer* (1967) 251 Cal.App.2d 303, 316 [59 Cal.Rptr. 463, 27 A.L.R.3d 884]. *Custodio,* in turn, purported to derive this test from *Gill* v. *Epstein* (1965) 62 Cal.2d 611, 617-618 [401 P.2d 397]. (251 Cal.App.2d at p. 316.) However, *Gill* does not actually set out this test: it says only that "a chain of causation *may* be broken by an independent intervening act which is not reasonably foreseeable . . . ." (62 Cal.2d at pp. 617-618, italics added.)

Cal.3d at p. 59, fn. 14 [citing *Schrimscher* as a case where "policy consid-erations . . . weigh[ed] against imposition of liability"].) Since that rationale does not apply here, we must decide whether the first rationale, which Ryder relies on, constitutes *Schrimscher's* true *ratio decidendi. Whitton,* decided after *Schrimscher* by the same court, throws light on this subject.

### 2. *Whitton.*

In *Whitton* the parties agreed that after a drunk driver rear-ended the CHP van parked on the paved shoulder of the road, the injured plaintiff wound up between the van and her own car; however, they disagreed as to how she got there. According to the plaintiff, the officers had caused her to stand between the vehicles while processing her arrest. According to the defense, she was standing on the dirt side of the road, not on the paved shoulder, when the drunk driver appeared, and wound up between the vehicles due to one or another odd sequence of events. (98 Cal.App.3d at pp. 239-240.) The jury found that the officers were not negligent in any respect. (*Id.* at p. 242.)

On appeal the plaintiff asserted that the CHP officers failed to exercise due care by placing her on the roadside because it was foreseeable that any vehicle which went off the road would rear-end the officers' van, exposing her to danger. (*Whitton, supra,* 98 Cal.App.3d at p. 241.) The court construed the jury's verdict as a finding, supported by substantial evidence, in favor of the defense theory of how the accident happened. (*Id.* at p. 242.) Thus, in the court's view, the plaintiff was really contending that CHP officers had "some sort of absolute liability" for any accident which might occur during a stop on the shoulder of a highway—a conclusion the court rejected. (*Ibid.*) The court held that CHP officers have no duty to stopped motorists to make the place of stop totally safe (*ibid.*) and cannot foresee the likelihood of a drunk driver going off the road at a given spot any better than any other highway user (unless they have actual knowledge of a history of accidents at that spot, which had not been shown here). (*Id.* at pp. 242-243.) Then, citing *Schrimscher, supra,* 58 Cal.App.3d at pages 664-665, the court held that the drunk driver's act in this case was not reasonably foreseeable "as a matter of law." (*Whitton, supra,* 98 Cal.App.3d at p. 244.) The court concluded: "Comparison of [*Schrimscher*] to the [case] at bench illustrates the need to apply the same rule here. . . . *To deny the officer the right to recover when he is injured in the performance of his duty, but on the other hand to impose liability on the officer for anyone else who might be hurt under the same circumstances not only would be unfair but would make shambles of whatever small measure of guidance remains in the doctrine of duty in the field of tort law.*" (*Ibid.,* italics added.)

Thus, like *Schrimscher, Whitton* invokes both the "unforeseeability/super-seding" cause rationale and the policy against imposing liability for acci-dents arising in the course of a CHP officer's duty. However, we must give

great weight to *Whitton*'s exegesis of *Schrimscher*'s "rule," since the *Whitton* court was essentially the same as the *Schrimscher* court. *Whitton*'s peroration, quoted above, on the significance of *Schrimscher* (98 Cal.App.3d at p. 244) leaves little doubt that the court which decided both cases saw public policy as the primary rationale for its rulings. Though *Whitton* is not, strictly speaking, a "firefighter's rule" case, its holding is similarly motivated by the desire to banish considerations of tort liability from the realm of traffic officers' routine job-related activities. (Cf. *Bigbee, supra*, 34 Cal.3d at p. 59, fn. 14; *Walters, supra*, 20 Cal.3d at p. 203; *Farmer, supra*, 75 Cal.App.3d at p. 46.)

Thus, *Schrimscher* and *Whitton* collectively stand for a narrow policy-based exception to standard rules of tort liability which does not apply to our case. Whatever grounds there may be for declaring tort questions off-limits as to the job duties of public safety officers, these grounds do not extend to the activities of private entities such as Ryder.

As the preceding discussion illustrates, the trial court erroneously granted Ryder's summary judgment motion.

### DISPOSITION

The judgment is reversed. Appellants shall recover costs on appeal.

Davis, J., and Raye, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 21, 1993. Panelli, J., was of the opinion that the petition should be granted.