[No. S178799. Feb. 28, 2011.]

MARIA CABRAL, Plaintiff and Respondent, v.
RALPHS GROCERY COMPANY, Defendant and Appellant.

**COUNSEL**

Richland, Timothy T. Coates and Lillie Hsu for Defendant and Appellant.

Shernoff Bidart Darras Echeverria, Darraslaw, Frank N. Darras, Lissa A. Martinez; Donahue & Horrow, Michael B. Horrow; Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiff and Respondent.

Smith & McGinty and Daniel U. Smith for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—A truck driver working for Ralphs Grocery Company (Ralphs) stopped his tractor-trailer rig alongside an interstate highway in order to have a snack. Plaintiff's husband, decedent Adelelmo Cabral, driving his pickup truck home from work, veered suddenly off the freeway and collided at high speed with the rear of the stopped trailer, resulting in his own death. (Cabral was not intoxicated at the time; experts opined he either fell asleep at the wheel or lost control due to an undiagnosed medical condition.) The jury found both decedent and the Ralphs driver to have been negligent and to have caused the accident, but allocated 90 percent of the fault to decedent and only 10 percent to the Ralphs driver. The trial court denied Ralphs's motion for judgment notwithstanding the verdict and entered a judgment awarding plaintiff damages for the wrongful death of her husband.

The Court of Appeal reversed, holding Ralphs owed no legal duty to avoid a collision between a negligent driver and the company's stopped truck. We disagree with the Court of Appeal's conclusions. California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others. (Civ. Code, § 1714, subd. (a).) While this court may and sometimes does find exceptions to the general duty rule, the recognized grounds for doing so (see *Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113 [70 Cal.Rptr. 97, 443 P.2d 561]) are lacking here. That drivers may lose control of their vehicles and leave a freeway for the shoulder area, where they may collide with any obstacle placed there, is not categorically unforeseeable. Nor does public policy clearly demand that truck drivers be universally permitted, without the possibility of civil liability for a collision, to take nonemergency breaks alongside freeways in areas where regulations permit only emergency parking.

■ Were we to recognize the categorical exemption from the duty of ordinary care Ralphs seeks, no liability could be imposed even when a driver unjustifiably stops his or her vehicle alongside the freeway in particularly dangerous circumstances. For example, parking a tractor-trailer for the night immediately next to the freeway traffic lanes on the outside of a poorly lit downhill curve, merely in order to save the cost of a spot in a truck stop, could well be considered negligent. Yet the parking truck driver in that scenario would as a matter of law bear no responsibility for a collision if, as Ralphs contends, no duty exists to exercise reasonable care, in parking alongside a freeway, for the safety of motorists who may unintentionally leave the freeway. We therefore decline to create a categorical rule exempting those parking alongside freeways from the duty of drivers to exercise ordinary care for others in their use of streets and highways.

The general duty of ordinary care being applicable, it was for the jury to determine whether the Ralphs driver *breached* that duty, whether decedent Cabral was also negligent, whose negligence caused the collision, and how to allocate comparative fault between the parties. As Ralphs does not contend the evidence was insufficient to support the finding the company breached its duty of ordinary care and bore one-tenth of the total fault for the accident, we do not decide that question.

## FACTUAL AND PROCEDURAL BACKGROUND

On the day of the accident, February 27, 2004, Hen Horn was employed by Ralphs as a tractor-trailer truck driver. On that evening, while driving his delivery route eastbound on Interstate 10, Horn stopped just beyond the Interstate 15 crossing to have a snack. He regularly made a brief stop at this location to eat part of the meal his wife had prepared for him. Horn stopped the tractor-trailer rig off the paved roadway, on what the investigating California Highway Patrol officer, Michael Migliacci, described as "the dirt portion of the shoulder." There is a large dirt area at that location between the eastbound Interstate 10 lanes and a transition road from northbound Interstate 15. In 2001, at the request of the California Highway Patrol, California's Department of Transportation (CalTrans) had placed an "Emergency Parking Only" sign in the area. Horn saw the sign from where he stopped, about 16 feet from the outermost traffic lane.[1]

Decedent Adelelmo Cabral was driving home from work alone in his pickup truck, eastbound on Interstate 10. Juan Perez, driving on the freeway behind him, saw decedent's vehicle, which was traveling around 70 or 80 miles per hour, swerve within its lane, then change lanes rapidly and pass other vehicles. Finally, the pickup truck abruptly crossed the outermost lane of traffic and left the freeway "as if he was trying to get off the interstate." Decedent's vehicle then traveled parallel to the road along the adjacent dirt until it hit the rear of Horn's trailer. Perez saw no brake lights or other indications of an attempt to slow down before the collision.

A toxicology report on Cabral, who died at the scene, was negative. In the absence of evidence of intoxication, suicide, mechanical defects or a medical condition, and considering how long Cabral had been awake on the day of the accident (which occurred in the evening), an expert witness called by plaintiff believed Cabral had fallen asleep while driving. A defense expert, believing

---

[1] Horn testified he pulled over to check his brakes because of fluctuations on the pressure gauge. He was impeached on this point, however, by his statements at the time of the accident to the investigating California Highway Patrol officer and, later, to an investigator hired by plaintiff, as well as by his admission he never told Ralphs of the asserted problem and by expert testimony that the fluctuations described were normal.

Cabral's reported lane and speed changes were inconsistent with the results of fatigue, opined the accident probably resulted from an unknown medical condition.

Cabral's widow, plaintiff Maria Cabral, sued Ralphs for wrongful death, alleging the company's employee, Horn, had caused decedent's death through his negligence in stopping for nonemergency reasons on the freeway shoulder. Ralphs cross-complained for damage to its tractor-trailer. The jury found both Cabral and Horn were negligent, both their negligent acts were substantial factors in causing Cabral's death, and Cabral's negligence was a substantial factor in causing the damage to Ralphs's tractor-trailer. The jury assigned 90 percent of the responsibility for the accident to Cabral and 10 percent to Horn. Plaintiff's total economic damages were fixed by the jury at $480,023; noneconomic damages were $4.33 million. After reduction for Cabral's 90 percent comparative fault and offset by the $4,725 awarded Ralphs on its cross-complaint, plaintiff's net damage award was $475,298.

Ralphs appealed from the judgment on the jury verdict and from the trial court's denial of its motion for judgment notwithstanding the verdict. A divided panel of the Court of Appeal reversed, agreeing with Ralphs that the company was entitled to judgment notwithstanding the verdict because it "owed no duty to Decedent." The majority rested its holding primarily on its conclusions that the possibility of a driver losing control of his or her vehicle and colliding with a tractor-trailer stopped off the freeway, in an area in which emergency parking is permitted, is too remote to be considered foreseeable and that the societal burden of imposing a duty would be great, as parked motorists or neighboring property owners could be held liable for failure to provide a "safe landing" for drivers leaving any type of roadway.

We granted plaintiff's petition for review.

## DISCUSSION

"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.] [¶] . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68 [104 Cal.Rptr.2d 602, 18 P.3d 29].) In part II., *post*, we will consider whether substantial evidence supports the jury's verdict as to causation. We first must decide whether Ralphs owed plaintiff a duty of reasonable care to avoid injury to her husband, decedent Adelelmo Cabral. Duty is a question of law for the court, to be reviewed de novo on appeal.

(*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 [63 Cal.Rptr.3d 99, 162 P.3d 610]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

## I. Duty

▮ The general rule in California is that "[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." (Civ. Code, § 1714, subd. (a).) In other words, "each person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . .' " (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 [63 Cal.Rptr.2d 291, 936 P.2d 70], quoting *Rowland v. Christian, supra*, 69 Cal.2d at p. 112 (*Rowland*).) In the *Rowland* decision, this court identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland*, at p. 113; accord, e.g., *Castaneda v. Olsher, supra*, 41 Cal.4th at p. 1213; *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1192 [45 Cal.Rptr.3d 316, 137 P.3d 153]; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477 [110 Cal.Rptr.2d 370, 28 P.3d 116]; *Parsons v. Crown Disposal Co., supra*, 15 Cal.4th at p. 473.) As we have also explained, however, in the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where "clearly supported by public policy." (*Rowland*, at p. 112; accord, *John B.*, at p. 1191; *Merrill v. Navegar*, at p. 477.)[2]

[2] California law accords in this respect with that of American jurisdictions generally as reflected in recently published portions of the Restatement Third of Torts. Section 7 of the Restatement's summary of personal injury liability states: "(a) An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. [¶] (b) In exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification." (Rest.3d Torts, Liability for Physical and Emotional Harm, § 7 (2010).) One exception to the accord is that while California law considers foreseeability of injury a major factor in determining duty, the Restatement, as just quoted, would consider only "an articulated countervailing principle or policy," as distinct from foreseeability. (*Ibid.*; see *id.*, com. j, p. 82 ["The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of

■ Before applying the *Rowland* considerations to the duty question posed here, we note an important feature of the analysis: the *Rowland* factors are evaluated at a relatively broad level of factual generality. Thus, as to foreseeability, we have explained that the court's task in determining duty "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . ." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624]; accord, *Parsons v. Crown Disposal Co., supra,* 15 Cal.4th at p. 476; *Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1841 [20 Cal.Rptr.2d 913].)

In applying the other *Rowland* factors, as well, we have asked not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy. Thus in *Rowland* itself, considering whether the traditional property-law categories of invitee, licensee and trespasser should govern a property owner's duty of care, we observed that while in particular cases the certainty of injury, the burden of exercising due care, or the availability and cost of insurance may be greater as to one class of persons entering real property than as to another, such particular instances "do not warrant the wholesale immunities resulting from the common law classifications." (*Rowland, supra,* 69 Cal.2d at p. 119; see also *Knight v. Jewett* (1992) 3 Cal.4th 296, 315–320 [11 Cal.Rptr.2d 2, 834 P.2d 696] [danger of chilling participation in active sports justifies a categorical exception to the duty of ordinary care for participants' careless acts toward coparticipants]; *Parsons v. Crown Disposal Co., supra,* 15 Cal.4th at pp. 474–475 [societal burden of imposing a duty to guard against fright to a horse when properly using a vehicle or machine justifies not recognizing such a duty]; *Castaneda v. Olsher, supra,* 41 Cal.4th at pp. 1216–1217 [declining to recognize a landlord's duty not to rent to gang members in light of the burdens that recognizing such a duty would create].)

By making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a categorical no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff no duty of ordinary care, which is for the *court* to make, and a determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the *jury* to make. We explained the distinction as to foreseeability in *Ballard v. Uribe, supra,* 41

---

cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Thus, . . . courts should leave such determinations to juries unless no reasonable person could differ on the matter."].)

Cal.3d at page 573, footnote 6: While the court deciding duty assesses the foreseeability of injury from "the category of negligent conduct at issue," if the defendant did owe the plaintiff a duty of ordinary care the jury "may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place." An approach that instead focused the duty inquiry on case-specific facts would tend to "eliminate the role of the jury in negligence cases, transforming the question of whether a defendant breached the duty of care under the facts of a particular case into a legal issue to be decided by the court . . . ." (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 724, fn. 13 [110 Cal.Rptr.2d 528, 28 P.3d 249] [determining the scope of duty of an officer pulling over a vehicle for a moving violation].)

■ On the facts of a particular case, a trial or appellate court may hold that no reasonable jury could find the defendant failed to act with reasonable prudence under the circumstances. Such a holding is simply to say that as a matter of law the defendant *did not breach* his or her duty of care, i.e., was not negligent toward the plaintiff under the circumstances shown by the evidence. But the legal decision that an exception to Civil Code section 1714 is warranted, so that the defendant *owed no duty* to the plaintiff, or owed only a limited duty, is to be made on a more general basis suitable to the formulation of a legal rule, in most cases preserving for the jury the fact-specific question of whether or not the defendant acted reasonably under the circumstances.[3]

Turning to the case before us, we observe that no question as to *breach* of the duty of ordinary care is presented. The issue of Horn's negligence was submitted to the jury, which found him to have breached his duty of care under the particular circumstances shown by the evidence, but assessed his comparative fault as slight, 10 percent to decedent's 90 percent. Ralphs does

---

[3] Again, California law accords with the Restatement view. "No-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases." (Rest.3d Torts, Liability for Physical and Emotional Harm, § 7, com. a, p. 78.) "Sometimes reasonable minds cannot differ about whether an actor exercised reasonable care . . . . In such cases, courts take the question of negligence away from the jury and determine that the party was or was not negligent as a matter of law. . . . [¶] In other situations, reasonable minds could differ about the application of the negligence standard to a particular category of recurring facts, but under the rubric of duty courts render a judgment about that category of cases. . . . In conducting its [duty] analysis, the court may take into account factors that might escape the jury's attention in a particular case, such as the overall social impact of imposing a significant precautionary obligation on a class of actors. These cases are properly decided as duty or no-duty cases. When no such categorical considerations apply and reasonable minds could differ about the competing risks and burdens or the foreseeability of the risks in a specific case, however, courts should not use duty and no-duty determinations to substitute their evaluation for that of the factfinder." (*Id.*, com. i, pp. 81–82, citation omitted.)

not contend substantial evidence of Horn's negligence or the allocation of fault was lacking, i.e., that on these specific facts no reasonable jury could have found Ralphs was even 10 percent at fault in the accident.

On the *duty* question that *is* presented here, the factual details of the accident are not of central importance. That Horn parked 16 feet from the outermost traffic lane, rather than six feet or 26 feet; that parking for emergencies was permitted in the dirt area he chose; that Adelelmo Cabral likely left the highway because he fell asleep or because of some unknown adverse health event, rather than from distraction or even intoxication—none of these are critical to whether Horn owed Cabral a duty of ordinary care. These facts may have been important to the jury's determinations of negligence, causation and comparative fault, but on duty California law looks to the entire "category of negligent conduct," not to particular parties in a narrowly defined set of circumstances. (*Ballard v. Uribe, supra,* 41 Cal.3d at p. 573, fn. 6; see also *Jackson v. Ryder Truck Rental, Inc., supra,* 16 Cal.App.4th at p. 1841 [rejecting, as an improper "ultra-specific manner" of defining risk, the defendant's claim that "it was not reasonably foreseeable that the decedent would be struck by an errant vehicle 'while standing on the shoulder of the roadway four feet inside the fog line.' "].) To base a duty ruling on the detailed facts of a case risks usurping the jury's proper function of deciding what reasonable prudence dictates under those particular circumstances.

■ Ralphs contends Horn "owed Cabral no duty to avoid stopping near the freeway for a nonemergency," while plaintiff claims truck drivers generally, and Horn specifically, owe other drivers "a duty of reasonable care . . . concerning the manner in which they park their trucks alongside California freeways." We take the issue between the parties to be whether a freeway driver owes other drivers a duty of ordinary care in choosing whether, where and how to stop on the side of the road. Because the general duty to take ordinary care in the conduct of one's activities (Civ. Code, § 1714, subd. (a)) indisputably applies to the operation of a motor vehicle, the issue is also properly stated as whether a categorical exception to that general rule should be made exempting drivers from potential liability to other freeway users for stopping alongside a freeway.

## A. *Foreseeability and Related Factors*

We examine here the first three related considerations identified in *Rowland*: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the defendant's conduct and the injury suffered . . . ." (*Rowland, supra,* 69 Cal.2d at p. 113.)

■ In the generalized sense of foreseeability pertinent to the duty question, that a vehicle parked by the side of a freeway may be struck by another vehicle leaving the freeway, resulting in injury to either vehicle's occupants, is clearly foreseeable. Drivers are supposed to control their vehicles and keep them on the traveled roadway, but common experience shows they do not always do so. Freeway drivers may be intoxicated, distracted, blinded by the weather or sun, sleepy or sick, and for any of these reasons or others may drive off the roadway. Mechanical problems with their vehicles can also force motorists to suddenly leave the freeway. If they do so at freeway speeds and collide with another vehicle parked alongside the road, they are likely to be injured, or to injure other occupants of the vehicles, or both. This general foreseeability is reflected in the Official Reports, in that numerous decisions have involved collisions between vehicles leaving a highway and vehicles or other obstacles on the roadside.[4] As we observed in *Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58 [192 Cal.Rptr. 857, 665 P.2d 947] (albeit in discussing an issue of breach, not duty), "it is not uncommon for speeding and/or intoxicated drivers to lose control of their cars and crash into poles, buildings or whatever else may be standing alongside the road they travel—no matter how straight and level that road may be."

Evidence at trial showed that safety standards and guidelines have been formulated with the goal of avoiding collisions between vehicles leaving freeways and trucks or other obstacles alongside the freeway. A highway engineer testified that freeway safety standards disapproved placing any "massive obstacle" within 30 feet of the traffic lanes. Where feasible, existing obstacles—objects massive or large enough to cause rapid deceleration or change in direction to a vehicle leaving the freeway—are to be removed. Where they cannot be removed, relocated or redesigned to bend or break, they are to be protected with guardrails or similar devices.[5] The Ralphs

---

[4] See, e.g., *Lugtu v. California Highway Patrol, supra,* 26 Cal.4th at pages 708–709 (pickup truck drifted out of the fast lane of a freeway into the median area, striking another vehicle that a highway patrol officer had pulled over for speeding); *Bryant v. Glastetter* (1995) 32 Cal.App.4th 770, 774–775 [38 Cal.Rptr.2d 291] (tow truck driver killed while preparing to remove a vehicle from the shoulder of an interstate highway); *Jackson v. Ryder Truck Rental, Inc., supra,* 16 Cal.App.4th at page 1835 (truck driver stopped alongside the highway due to a mechanical problem was struck by a vehicle veering off the highway); *Scott v. Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 513–514 [6 Cal.Rptr.2d 810] (drunken driver drifted off the highway, hit a guardrail placed to block a fixture on the adjoining property, and veered back across the center line); *Whitton v. State of California* (1979) 98 Cal.App.3d 235, 239 [159 Cal.Rptr. 405] (drunken driver drove off the freeway at 45 to 50 miles an hour, colliding with a California Highway Patrol vehicle stopped on the shoulder). We cite these decisions here only for their facts, not their holdings.

[5] Published guidance from CalTrans is to the same effect. "An area clear of fixed objects adjacent to the roadway is desirable to provide a recovery zone for vehicles that have left the traveled way. Studies have indicated that on high-speed highways, a clear width of 30 feet from the edge of the traveled way permits about 80 percent of the vehicles leaving the roadway out of

transportation manager in charge of driver training and discipline testified that when he learned Ralphs drivers were stopping on the freeway side for nonemergency reasons he instructed them not to do so. He regarded such stopping as a danger to the drivers themselves and to other motorists "should they leave the roadway." The existence of guidelines seeking to keep the shoulder area free of massive obstacles supports a conclusion the possibility of vehicles leaving the freeway and colliding with obstacles is generally foreseeable.

Ralphs cites *Whitton v. State of California, supra,* 98 Cal.App.3d 235, as holding a collision between a vehicle leaving the freeway and one stopped alongside is not foreseeable absent site-specific circumstances making an accident particularly likely at the location. But *Whitton,* heard on the plaintiff's appeal of a defense verdict, held only that substantial evidence supported the jury's finding highway patrol officers acted nonnegligently in stopping a speeding motorist and conducting sobriety tests while stopped on the freeway shoulder (where the patrol vehicle was hit by a drunken driver, injuring the motorist who had been pulled over). (*Id.* at pp. 242–243.) *Whitton,* in other words, decided a question of *breach,* not one of *duty.*

In the course of its discussion, the *Whitton* court rejected the plaintiff's contention "that irrespective of the fact that the jury found on solid and substantial evidence that the officers acted reasonably, there is some sort of *absolute liability* on the part of the CHP officers" (*Whitton v. State of California, supra,* 98 Cal.App.3d at p. 242, italics added) because of a possibility a drunken driver would crash into the stopped vehicles, reasoning that such a possibility did not make the officers "negligent *as a matter of*

---

control to recover. Therefore, 30 feet should be considered the minimum, traversable clear recovery area for freeways and high-speed expressways." (CalTrans, Traffic Manual (2008) ch. 7, Traffic Safety Systems, § 7-02.1, p. 7-2, accessible at <http://www.dot.ca.gov/hq/traffops/saferesr/devices.htm> [as of Feb. 28, 2011].)

We granted plaintiff's request to take judicial notice of this section of the CalTrans Traffic Manual over Ralphs's objection that the Traffic Manual was not introduced as evidence or presented for judicial notice in the trial court. We consider the CalTrans Traffic Manual here not to supplement the factual record of the case, but only as it bears on the legal issue of existence of a duty of care in stopping alongside a freeway. In determining de novo what the law is, appellate courts routinely consider materials that were not introduced at the trial, including publications containing expressions of viewpoints and generalized statements about the state of the world. These are considered not as a substitute for evidence but as an aid to the court's work of interpreting, explaining and forming the law. As the Law Revision Commission has explained, the Evidence Code does not restrict courts in their consideration of materials for the purpose of determining the law. (Cal. Law Revision Com. com., 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 450, p. 420; see also Rest.3d Torts, Liability for Physical and Emotional Harm, § 7, com. b, p. 79 ["Courts determine legislative facts necessary to decide whether a no-duty rule is appropriate in a particular category of cases."].) We could have considered the CalTrans manual as background to our determination of the law without taking formal notice of it; plaintiff's request, while not improper, was thus unnecessary.

*law*" or render them "*insurers* of the motorists' safety from drunken drivers" (*ibid.*, italics added). No such issue of negligence as a matter of law or absolute liability is involved here, of course. Here the jury found defendant's driver *did* act negligently, and defendant contends it had no duty of care towards plaintiff or her husband. *Whitton*, as noted, did not question the existence of such a duty of care. Indeed, as we have previously explained, the *Whitton* court "explicitly recognized that the CHP officers, in making the traffic stop, had a duty 'to perform their official duties in a reasonable manner' " (*Lugtu v. California Highway Patrol, supra,* 26 Cal.4th at p. 717, quoting *Whitton*, at p. 241), but held the evidence at trial sufficient to show they had done so.

Ralphs contends CalTrans's prior placement of an "Emergency Parking Only" sign at the accident site showed it was a safe place to park in an emergency, and hence "a safe place to stop, period," making a collision there unforeseeable. Relying on *Richards v. Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23] and its progeny, Ralphs argues that for an accident to be considered foreseeable there must be "evidence of specific circumstances that make an accident in a particular place likely to happen."

We disagree. To be sure, the evidence at trial showed Horn stopped his tractor-trailer at a location where the freeway was bordered with a dirt area, and there was no evidence the spot he chose entailed danger beyond the normal risk posed by parking on the shoulder of a freeway. These circumstances probably played a role in the jury's decision to assign Horn and Ralphs only a minimal share of responsibility for the collision, but they do not show lack of foreseeability for the entire *category* of negligent conduct at issue here. (*Ballard v. Uribe, supra,* 41 Cal.3d at p. 573, fn. 6.) As discussed earlier, the foreseeability question for *duty* purposes is not whether Horn could reasonably have foreseen an accident at that exact spot along the highway, but whether it is generally foreseeable that a vehicle stopped alongside a freeway may be hit by one departing, out of control, from the road.

■ Moreover, that *emergency* parking was permitted where Horn stopped, and would presumably not have been considered negligent, does not imply a collision at that spot was unforeseeable. The reasonable care required by negligence law depends on all the circumstances, and there are many acts prudent to do under the pressure of exigency that would be negligent but for the emergency. (See, e.g., *Lane v. Jaffe* (1964) 225 Cal.App.2d 172, 176 [37 Cal.Rptr. 171] [evidence supports finding that a driver who parked his car with a flat tire on a narrow median was not negligent].) The difference between parking a truck alongside the freeway in an emergency and parking in the same location to eat a meal or make a telephone call does not lie in the

type or degree of foreseeable risk; in both cases it is foreseeable, in the general sense pertinent to duty, that a vehicle might depart from the freeway and hit the stopped truck. The difference lies instead on the justification side of the negligence balance. As plaintiff observes, in the emergency situation "[s]ociety tolerates that risk because allowing drivers to stop in an occasional emergency outweighs the risk." The balance is different—or, at least, juries may find it so—when the stop is made for discretionary personal purposes.[6]

Nor do *Richards v. Stanley, supra*, 43 Cal.2d 60 (*Richards*), and our subsequent key-in-the-ignition cases stand for the proposition that absent special circumstances a collision between a vehicle parked alongside the freeway and one departing out of control from the freeway is unforeseeable. The *Richards* line of cases involves significantly different facts.

In *Richards*, the defendant had left her parked car unlocked, with the ignition key in the lock. A thief took the car and, driving carelessly, injured the plaintiff. (*Richards, supra*, 43 Cal.2d at pp. 61–62.) Relying on the principle that ordinarily, "in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another" (*id.* at p. 65), and the corollary rule that "an automobile owner is not ordinarily negligent if he lends his car to another; except in certain special circumstances" (*id.* at pp. 65–66), we concluded the defendant's "duty to exercise reasonable care in the management of her automobile did not encompass a duty to protect plaintiff from the negligent driving of a thief" (*id.* at p. 66). In later decisions we distinguished *Richards*, finding special circumstances in the characteristics of the vehicle or piece of equipment, or in the manner or location in which a vehicle was left vulnerable to third party driving, that warranted recognition of a duty. (See, e.g., *Ballard v. Uribe, supra*, 41 Cal.3d at p. 573; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 184–186 [203 Cal.Rptr. 626, 681 P.2d 893]; *Richardson v. Ham* (1955) 44 Cal.2d 772, 776 [285 P.2d 269].)

*Richards*'s limitation on the duty of a vehicle owner "to protect third parties from the unauthorized use of the vehicle by another" (*Ballard v. Uribe, supra*, 41 Cal.3d at p. 572), a limitation derived from the principle that in the absence of a special relationship there is ordinarily no duty to control the dangerous conduct of another person (*Palma v. U.S. Industrial Fasteners, Inc., supra*, 36 Cal.3d at pp. 184–185; *Richards, supra*, 43 Cal.2d at pp. 65–66), has no application to the type of negligent conduct at issue in this case. That

---

[6] In this connection, we note the evidence showed there were two truck stops in the immediate vicinity of the accident site, one about a mile west of where Horn stopped and one two or three miles to the east. In light of that evidence, the jury may well have believed Horn was particularly unjustified in routinely stopping alongside the freeway at this location for his snack.

the risk created by a thief's negligent driving was deemed unforeseeable in *Richards* does not tend to establish that the risk created by Horn's *own negligence* in stopping, with inadequate justification, by the side of a freeway should also be deemed unforeseeable. (See *Jackson v. Ryder Truck Rental, Inc., supra*, 16 Cal.App.4th at pp. 1843–1844 [distinguishing *Richards*, where the defendant's own negligence led to the plaintiff being stopped by the side of the freeway, creating a risk of collision with vehicles leaving the roadway].)

*Richards* reasoned in part that the defendant, by leaving her car unlocked and unguarded, did not increase the risk of an accident over the risk that would have existed had she intentionally entrusted her car to another. (*Richards, supra*, 43 Cal.2d at p. 66.)[7] But parking a tractor-trailer rig alongside the freeway in what CalTrans calls the "recovery zone" (CalTrans, Traffic Manual, *supra*, ch. 7, Traffic Safety Systems, § 7-02.1, p. 7-2), as Horn did, does increase the risk of a collision over the risk existing when no obstacle is present. *Richards*, which concerned conduct that merely allowed a third party to take a vehicle and injure the plaintiff, does not stand for the proposition that special circumstances should be required for the instant, very different category of negligent conduct.

As the above discussion suggests, the question of "the closeness of the connection between the defendant's conduct and the injury suffered" (*Rowland, supra*, 69 Cal.2d at p. 113) is strongly related to the question of foreseeability itself. *Richards*'s holding could fairly be characterized as resting on a too attenuated connection between the defendant's negligent conduct, leaving the car unlocked, with the ignition key available, and the plaintiff's injury in a collision caused by a negligently driving thief. (See *Bryant v. Glastetter, supra*, 32 Cal.App.4th at pp. 781, 782, fn. 2 [noting relationship between foreseeability and closeness-of-connection factors]; *Jackson v. Ryder Truck Rental, Inc., supra*, 16 Cal.App.4th at p. 1844 [relating foreseeability and closeness-of-connection considerations in discussion of *Richards*].) Generally speaking, where the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable. Conversely, a closely connected type of injury is likely to be deemed foreseeable.

---

[7] One might well question the *Richards* court's apparent assumption that car thieves, as a class, are no worse drivers than persons to whom vehicles are intentionally loaned. As *Richards* is distinguishable on more fundamental points here, however, we again have no occasion to reconsider its validity. (See *Ballard v. Uribe, supra*, 41 Cal.3d at p. 572, fn. 5, and *Palma v. U.S. Industrial Fasteners, Inc., supra*, 36 Cal.3d at p. 186, fn. 13 [both noting, but not resolving, questions about *Richards*'s continued viability].)

*Bryant v. Glastetter, supra*, 32 Cal.App.4th 770, which Ralphs cites on the foreseeability factor, is best understood as resting on a lack of close connection between the defendant's conduct and the injury suffered. In *Bryant*, a tow truck driver working to remove a vehicle from the shoulder of a freeway was fatally struck by a passing vehicle. His surviving wife and children sued the original driver of the vehicle he was removing, who had earlier been pulled over and arrested for drunken driving at that location. (*Id.* at pp. 774–775.) The appellate court held the defendant (the drunken driver) owed no duty to the decedent to prevent the injury he suffered. The defendant owed decedent, like anyone else potentially injured by her driving while intoxicated, a duty to refrain from doing so (*id.* at p. 779), but the connection between her negligence and the type of injury that resulted—an errant vehicle striking the tow truck driver called to remove her car from the freeway—was too indirect and attenuated, for "there is no logical cause and effect relationship between that negligence and the harm suffered by decedent except for the fact that it placed decedent in a position to be acted upon by the negligent third party." (*Id.* at p. 782.)[8]

Resting as it does on the indirectness of the connection between the defendant's drunken driving and the injury to the plaintiff, *Bryant* does not assist Ralphs's argument. Unlike the situations in *Bryant*—and *Richards*—no third party negligence intervened between the Ralphs driver's negligent conduct and Adelelmo Cabral's injury. Ralphs did not merely "place[] decedent in a position to be acted upon by [a] negligent third party." (*Bryant v. Glastetter, supra*, 32 Cal.App.4th at p. 782). Rather, the conduct of the Ralphs driver that the jury found negligent, stopping his tractor-trailer alongside an interstate highway for a nonemergency reason, placed by the roadway a massive, if temporary, obstacle not previously there. It thus directly created the risk of a collision for any vehicle leaving the freeway at that point, the same risk that eventuated and resulted in Cabral's death.

---

[8] Because the defendant in *Bryant* clearly owed all users of the road, including the decedent, a duty to refrain from driving while intoxicated, the court's holding (that she did not owe the decedent a duty of reasonable care to prevent his injury at the hands of a third party driver while he removed the defendant's car from the freeway shoulder) was one *limiting the scope* of the defendant's duty rather than a holding of *no duty*. Whether determinations of this sort—that the particular injury suffered by the plaintiff was not within the range of risks created by the defendant's negligent conduct—should be made by the court as part of a duty analysis or by the jury in determining causation is debatable. (See Rest.3d Torts, Liability for Physical and Emotional Harm, § 29, com. f, p. 500 [acknowledging different approaches and arguing most limitation-of-liability determinations should be made by the jury because of their dependence on the specific facts of the case]; see also Prosser, Palsgraf *Revisited* (1953) 52 Mich. L.Rev. 1, 31–32 [urging courts to proceed with caution in taking cases from juries on grounds of too attenuated a connection between negligent conduct and injury suffered, in light of frequent disagreement among courts and commentators over how close the connection must be].)

Cabral's own negligence was, of course, also found to be a cause of the accident, for which the jury assigned him 90 percent of the comparative fault. Ralphs, however, disavows any argument that Cabral's negligent driving was a superseding cause cutting off the company's own liability, an argument that, in any event, would appear precluded by our reasoning and conclusion in *Lugtu v. California Highway Patrol, supra*, 26 Cal.4th at pages 725–726. We held there that the negligence of a driver whose vehicle veered into the median and hit a vehicle negligently pulled over there by the highway patrol was not a superseding cause of the stopped driver's and passengers' injuries: "The risk of harm posed by the negligence of an oncoming driver is one of the foremost risks against which [the highway patrol officer's] duty of care was intended to protect." (*Ibid.*) Any comparison of the two negligent acts, the officer's and the vehicle driver's, was to be done by the jury in apportioning fault, not by the court as a matter of law. (*Id.* at p. 726.) To the extent Horn acted negligently in stopping alongside the freeway, as the jury found he did, it is because he unreasonably created a risk of precisely the type of event that occurred; the connection between negligent conduct and injury is thus sufficiently close. In urging us to hold it owed Cabral no duty because he was injured only as a result of his own negligence, Ralphs asks us to do under the duty rubric what we would not do in the name of causation in *Lugtu*, an invitation we should again decline.

The general foreseeability of a collision between a vehicle leaving the freeway and one stopped alongside the road, and the relatively direct and close connection between negligent stopping and such a collision, weigh against creating a categorical exception to the duty of ordinary care.[9]

### B. *Considerations of Public Policy*

█ We ask next whether the public policy factors identified in *Rowland*—"the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved" (*Rowland, supra*, 69 Cal.2d at p. 113)—justify creating a duty exception immunizing drivers from potential liability for negligently stopping their vehicles alongside freeways. We conclude such an exception is not "clearly supported by public policy." (*Id.* at p. 112.)

The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible. The

---

[9] The final *Rowland* consideration in this group, the degree of certainty plaintiff was injured, is also satisfied here. Adelelmo Cabral was killed in the accident, for which plaintiff undisputedly has a remedy in wrongful death if his death was negligently caused.

policy question is whether that consideration is outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability.

While a driver who negligently stops his or her vehicle alongside a freeway does not act in an especially blameworthy manner, Ralphs concedes its driver could be ticketed where, as here, the area was marked for emergency parking only. More to the point, no state or federal law *encourages or authorizes* drivers to stop their vehicles alongside an interstate highway in order to eat a meal, take a nap, make a nonemergency telephone call, or conduct other personal business. Stopping alongside the freeway for such discretionary purposes is hardly a heinous act, but neither does it receive any special legal protection.

The parties dispute whether parking along a highway without exigent reason violates Vehicle Code section 21718, subdivision (a), which generally prohibits unnecessarily parking or stopping a vehicle "upon a freeway." Ralphs contends the prohibition applies only to the freeway's traffic lanes,[10] while plaintiff argues it applies to the freeway shoulder as well.[11] We need not decide the issue, as the question before us is only whether there is any state policy, such as would clearly justify an exception to the general duty of ordinary care, *promoting or protecting* the activity of parking alongside freeways for nonemergency purposes. We can discern no such state policy.

Nor would recognizing negligence liability place heavy burdens on those in Ralphs's circumstances or on the broader community of freeway users. As noted earlier, Ralphs's driver safety manager testified the company already prohibited its drivers from making nonemergency stops alongside the freeway. In general, drivers will be able to find rest areas, truck stops, or other parking areas near freeway exits where meals can be eaten, telephone calls made, luggage rearranged in the vehicle, and so on. (In the present case, as previously noted, Horn could have stopped at either of two truck stops in the immediate vicinity. (See *ante*, at p. 778, fn. 6.)) In unusual circumstances where

[10] See *People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1184 [269 Cal.Rptr. 21] (implying the defendant would not have violated predecessor statute had he coasted his stalled vehicle to the freeway shoulder instead of allowing it to stop in traffic lane); *Shuff v. Irwindale Trucking Co.* (1976) 62 Cal.App.3d 180, 184 [132 Cal.Rptr. 897] (truck driver violated predecessor statute by parking so as to "block[] a portion of the freeway").

[11] See *Tannyhill v. Pacific Motor Trans. Co.* (1964) 227 Cal.App.2d 512, 516 [38 Cal.Rptr. 774] (expressly assuming predecessor statute was violated by parking on a freeway shoulder); *Lane v. Jaffe, supra*, 225 Cal.App.2d at pages 175–177 (impliedly assuming predecessor statute would be violated by parking on a freeway median without statutorily adequate justification); *Patterson v. Delta Lines, Inc.* (1956) 147 Cal.App.2d 160, 163 [304 P.2d 842] (holding Veh. Code section requiring vehicle parked or standing " 'upon a highway' " at night to display a rear light applies to a vehicle parked on the highway shoulder).

no such exits are available for long stretches, a stop alongside the freeway is less likely to be found negligent.

Ralphs argues that "creating a common-law duty to avoid stopping near a freeway for nonemergencies would adversely impact roadway safety" because tired or hungry drivers, uncertain whether or not their situations qualify as an emergency, might continue driving even when it is unsafe to do so. This argument materially misstates the issue. The question is not whether a *new duty* should be created, but whether an *exception* to Civil Code section 1714's duty of exercising ordinary care in one's activities, including operation of a motor vehicle, should be created. And the duty at issue is not one of avoiding all nonemergency freeway stops, but the duty to use reasonable care in choosing whether, when and where to stop alongside a freeway. This duty applies in both emergencies and nonemergencies, though the degree of urgency created by the circumstances is, of course, likely to be crucial in determining whether the driver exercised reasonable care. Moreover, as just discussed, tired or hungry drivers generally have the option of exiting the freeway and stopping to eat or rest where their vehicles will not pose a potential danger to other drivers. Because the duty at issue is only that of ordinary care, our rejection of the exemption Ralphs seeks does not mean all parking alongside freeways can result in negligence liability; whether the duty of ordinary care has been breached depends on the particular circumstances, including those aggravating or mitigating the risk created and those justifying the decision to stop on the shoulder or median rather than exit the freeway. Ralphs offers no support for its assertion that juries cannot be trusted to weigh these considerations under the particular facts of each case, as they do in deciding negligence generally.

Finally, Ralphs maintains recognizing a duty to exercise care in parking alongside a freeway "would have far-reaching consequences," allowing for potential liability for a driver who parks alongside "a suburban or rural road" or a landowner who places a fixed object such as a light post or mailbox next to a road if these vehicles or objects were later hit by a drunken or drowsy motorist on the road. Ralphs's parade of horribles is unpersuasive for two reasons. First, the consequences Ralphs posits do not follow from declining to create an exemption from potential liability here. As plaintiff observes, "freeways are radically different in their purpose and design from other public roads," making extrapolation of liability rules from freeways to other urban, suburban, or rural roads an uncertain exercise at best.

Second, the consequences posited are not necessarily absurd or unthinkable. California juries and courts *have*, in certain circumstances, imposed liability for collisions where the defendant has negligently parked a vehicle, or negligently placed an obstacle such as a street light pole, along a road

other than a freeway. (See, e.g., *Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260 [97 Cal.Rptr.3d 241] [light pole installed too close to curb]; *Flynn v. Bledsoe Co.* (1928) 92 Cal.App. 145 [267 P. 887] [truck parked at wrong angle on an urban street].) Whether or not all such cases were correctly decided, recognition of potential liability for placement of obstacles alongside roadways is clearly not the "radical expansion" Ralphs claims it is.

The Court of Appeal majority below similarly claimed that potential liability, if recognized here, would have no end. The dissenting justice's response was a cogent one: "[T]he majority asks, 'If a duty is imposed under the facts of this case, where does it end?' [Citation.] In turn, I ask: If a duty is *not* imposed under the facts of this case, then where does it begin?" Indeed, one might ask under what circumstances Ralphs would have us recognize a duty of ordinary care in stopping alongside a freeway, if not in these. If stopping 16 feet from the traffic lanes exempts a driver from the duty of care, does the same hold for parking six feet from the lane? Six inches? If we are to create immunity for a truck driver stopping for a few minutes to have a snack, should we also do so for one who decides to sleep for hours by the roadside rather than pay for a motel room? Would the categorical exemption Ralphs seeks still apply if a tractor-trailer driver parked an inch from the traffic lanes, on the outside of a curve, leaving the rig there all night without lights? To ask these questions is to see why a categorical exemption is not appropriate. The duty of reasonable care is the same under all these circumstances; what varies with the specific facts of the case is whether the defendant has breached that duty. *That* question, as discussed earlier, is generally one to be decided by the jury, not the court.[12]

## II. *Causation*

Ralphs contends the evidence at trial was insufficient to show Horn's negligent stopping of his tractor-trailer alongside the freeway was a but-for cause of the collision, and plaintiff thus failed to show Horn's negligent conduct was a substantial factor in causing Cabral's death. (See *Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052 [1 Cal.Rptr.2d 913, 819 P.2d 872].) The company also argues that, for reasons of public policy, Horn's stopping by the freeway should, as a matter of law, be deemed not a proximate cause of the collision. (See *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1045 [135 Cal.Rptr.2d 46, 69 P.3d 965].)

---

[12] The final *Rowland* consideration in this group, the availability of insurance, is clearly satisfied. (*Rowland, supra,* 69 Cal.2d at p. 113.) Insurance for operation of motor vehicles is generally available and, indeed, required, and there is no reason to believe its cost or prevalence will be significantly affected by declining to create the duty exception Ralphs seeks.

On the question of cause in fact, Ralphs maintains the trial court should have excluded the opinion of plaintiff's accident reconstruction expert that Adelelmo Cabral was braking and turning back toward the freeway when his pickup truck collided with Horn's tractor-trailer, because it rested on a nontestifying highway patrol officer's report; without that testimony, Ralphs argues, the remaining evidence is insufficient to support the jury's finding. We need not, however, decide whether the trial court erred in admitting the expert opinion. Substantial evidence independent of that opinion supports the jury's implied finding that, had Horn's tractor-trailer not been stopped where it was, Cabral likely would have come to a stop without a fatal collision like that which occurred. The driver behind Cabral testified Cabral's pickup was traveling parallel to the freeway at the time of the collision. Other evidence showed that in the direction of Cabral's travel there was a large expanse of hardpacked dirt without obstacles for Cabral to hit, ending with a gravel shoulder at a freeway on-ramp. The nearest structure was off to the right, not in the direction of Cabral's travel, and more than 400 feet away. Viewing this evidence in the light most favorable to plaintiff (*Sweatman v. Department of Veterans Affairs, supra,* 25 Cal.4th at p. 68), we conclude a jury could reasonably find no fatal collision was likely had Horn's tractor-trailer rig not been stopped in the shoulder area, making Horn's negligent conduct a substantial factor in causing Cabral's death.

Ralphs further contends Horn's negligent conduct cannot be deemed a cause of the collision, either as a factual matter or under a policy-oriented proximate cause analysis, because the same collision would have occurred had Horn stopped for emergency rather than personal reasons. "Because the same injuries would have occurred whether or not Horn was negligent," Ralphs argues, "as a matter of law his negligence cannot be deemed a proximate cause of Cabral's injuries." Again, we disagree. The negligent conduct plaintiff claimed caused her husband's death was Horn's stopping his tractor-trailer rig at the site. The counterfactual question relevant to but-for causation, therefore, is what would have happened if Horn had not stopped his tractor-trailer rig there, not what would have happened if Horn had had a better reason to stop.

Causation in fact and justification are generally independent considerations in assessing liability. A justified shooting, for example, can be as fatal as an unjustified one, yet, as plaintiff observes, "If Horn shot and killed Cabral in cold blood, he would not be able to escape liability by arguing that—under different circumstances—he *could* have been acting in self-defense." Similarly, stopping by the side of a freeway for an emergency might be just as dangerous to other motorists as stopping for a snack, but an emergency stop will not create liability because it is justified. While potential liability differs in the two situations (emergency and nonemergency), causation does not. Under the evidence at trial, a jury could find Horn's stop was a

substantial factor in causing the collision *whether or not* it was made for an emergency—though if made for an emergency, the stop would presumably not have been found negligent.

*Capolungo v. Bondi* (1986) 179 Cal.App.3d 346 [224 Cal.Rptr. 326], upon which Ralphs relies, does not support its argument. The defendant in *Capolungo* parked for several hours in a zone restricted by city ordinance to short-term parking for freight loading. The plaintiff, hit by a moving vehicle while swerving her bicycle to avoid the defendant's parked car, alleged negligence per se based on the parking ordinance violation. (*Id.* at pp. 348–349.) The appellate court rejected that claim, upholding summary judgment for the defendant, on the ground that the ordinance was not designed to prevent an accident of the type that occurred or to protect a class of persons that included the plaintiff, both elements of a negligence per se action. (*Id.* at pp. 350–354; see Evid. Code, § 669.) Parking time limits (in contrast to prohibitions on parking) are designed to maintain access to the space by multiple vehicles—to ensure one vehicle does not monopolize the space—not to keep traffic lanes unobstructed; indeed, such a time limit "clearly contemplates that the zone may be legally in use by vehicle after vehicle so that traffic in that lane might be constantly obstructed." (*Capolungo*, at p. 352.) In a brief discussion, the court then held that even if the plaintiff could establish the other elements of her action, causation could not be shown because the plaintiff "would have had to swerve around the car in exactly the same manner whether it had been parked there five minutes or five hours." (*Id.* at p. 354.)

*Capolungo*'s reasoning on causation is not entirely clear. The court's assertion that the accident would have happened in the same way if the defendant had obeyed the ordinance's time limit is incorrect if taken literally as a statement of fact; had the defendant removed his vehicle after five minutes, it would not in fact have been there when the plaintiff approached the location on her bicycle. To the extent the *Capolungo* court meant the plaintiff could not show causation because the parking space was one that, under the parking ordinance, was intended and likely to be more or less continually occupied, its reasoning has no application here. While emergency parking was permitted in the area where Horn stopped his tractor-trailer, no evidence suggested the area was expected to "be legally in use by vehicle after vehicle" as in *Capolungo v. Bondi, supra*, 179 Cal.App.3d at page 352. To the extent the court's conclusion rested on a policy ground—that statutory limits on negligence per se should not be bypassed through an expansive construction of proximate causation—it also has no application, as the jury here was not instructed and did not rest its verdict on a theory Ralphs was negligent as a matter of law. *Capolungo* is therefore unpersuasive in the circumstances.

## CONCLUSION AND DISPOSITION

We conclude, contrary to the decision of the Court of Appeal, that Ralphs was not entitled to judgment notwithstanding the verdict on grounds either of lack of legal duty or insufficient proof of causation. The judgment of the Court of Appeal is therefore reversed.

Cantil-Sakauye, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.