Filed 12/26/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>　　　　Cross-complainant and Appellant,<br><br>　　v.<br><br>AMERON POLE PRODUCTS LLC,<br><br>　　　　Cross-defendant and Respondent. | C088360<br><br>(Super. Ct. No. CVPM2015500) |

APPEAL from a judgment of the Superior Court of Yolo County, Thomas E. Warriner, Judge.  (Retired judge of the Yolo Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed.

Pacific Employment Law, Joseph P. Mascovich; Flesher Schaff & Schroeder, Jacob D. Flesher, Jason W. Schaff, and Jeremy J. Schroeder for Cross-complainant and Appellant.

Adelson McLean, Michael J. Fabrega, and Michael D. McLean for Cross-defendant and Respondent.

1

A motorist brought a personal injury action against appellant Union Pacific Railroad Company (Union Pacific) and respondent Ameron Pole Products LLC (Ameron) following a car accident in which she suffered serious injuries. Union Pacific filed a cross-complaint against Ameron for equitable indemnity and apportionment. Ameron moved for summary judgment, arguing the motorist would be unable to prove causation as a matter of law. Union Pacific opposed the motion, arguing that Ameron failed to carry its initial burden of showing entitlement to judgment as a matter of law. In the alternative, Union Pacific argued that evidence submitted in opposition to the motion raised a triable issue as to whether Ameron's negligence was a substantial factor in causing the motorist's injuries. The trial court granted the motion and entered judgment in Ameron's favor. We reverse.

## I. BACKGROUND

In September 2014, Katie was rear-ended on Interstate 80 by an SUV driven by Brian, a Union Pacific employee.[1] Katie lost control of her car, which spun off the freeway and onto the dirt shoulder, where it struck a roadside light pole. The light pole, which was manufactured by Ameron, was designed to "break away" on impact, causing the pole to pass over the impacting vehicle, thereby reducing the force of the collision and concomitant risk of injury. On this occasion, however, the light pole did not break away, but instead remained standing. Katie sustained multiple injuries, including skull fractures, injuries to her brain and face, a fracture of the right scapula, and bilateral chest trauma.

Katie commenced the instant action in Yolo County Superior Court on April 7, 2015. The case was removed to federal court, where Katie filed the operative second amended complaint. The second amended complaint asserts a single cause of action for

---

[1] Neither Brian nor Katie are a party to the present appeal.

2

negligence against Union Pacific and Brian, Ameron, and Pacific Excavation, Inc. (together, defendants).[2] The second amended complaint alleges that Brian, in the course and scope of his employment with Union Pacific, "merged to the left and struck [Katie], thereby causing injury and damages to [Katie]." The second amended complaint further alleges that Ameron "made the pole and constructed the faulty slip base," was "responsible, in whole or in part[,] for the design, engineering, and/or installation of the roadway lighting system," and "acted negligently or in strict liability as a supplier in the chain of commercial supply in the installation of the subject light pole leading to and causing the injuries alleged by [Katie]." The second amended complaint seeks economic and noneconomic damages according to proof.

Union Pacific and Ameron separately answered the second amended complaint and denied liability. Around the same time, the case was returned to Yolo County Superior Court, where various cross-complaints were filed. As relevant here, Union Pacific cross-complained for equitable indemnity and apportionment of fault against Ameron and Pacific Excavation. Pacific Excavation, for its part, cross-complained for equitable indemnity and apportionment against Union Pacific, Brian, and Ameron.

Following discovery, Ameron moved for summary judgment on the second amended complaint and cross-complaints on the sole ground that Katie could not establish causation. Relying on discovery responses in which Katie averred that Brian "caused the accident" by hitting her car, Ameron argued the accident would have occurred whether or not the light pole was defective or negligently installed, and therefore, causation could not be established as a matter of law. In the alternative, Ameron argued that Katie's responses to certain contention interrogatories were

---

[2] Pacific Excavation was apparently involved in the installation of the light pole, and is sometimes referred to as Tim Paxin's Pacific Excavation, Inc. For ease of reference, we shall refer to this entity as "Pacific Excavation."

3

"factually devoid" and shifted the burden to Katie to demonstrate the existence of a triable issue of material fact.

Union Pacific—and only Union Pacific—opposed the motion. Union Pacific argued that Ameron failed to make an affirmative showing that causation could not be established, and could not rely on Katie's "factually devoid" discovery responses to shift the burden of production to Union Pacific. Union Pacific also submitted an expert declaration from Dean C. Alberson, a registered professional engineer with experience in testing and evaluating highway safety features.[3]

Alberson explained that Ameron's light pole was manufactured with a breakaway slip base, a safety feature generally used in urban areas where vehicle speeds are moderate to high. Breakaway slip base systems connect upper and lower parts of light poles by means of slip plates. When properly installed, the force from an errant vehicle causes the top slip plate to disengage from the bottom slip plate, causing the pole to break away and fly over the vehicle. For the breakaway slip base to function correctly, however, the top of the bottom slip plate must be within four inches of the ground line.

Alberson averred that he had inspected the accident scene and determined that the light pole had been mounted on sloping ground.[4] Alberson opined that the slip base had not been installed in conformance with the standards set forth in the Roadside Design Guide published by the American Association of State Highway and Transportation Officials, and likely failed for that reason. Alberson further opined that, as a manufacturer of light poles with breakaway slip bases, Ameron should have warned

_____

[3] Union Pacific also submitted an expert declaration from Louis Cheng, Ph.D., an expert in accident reconstruction and biomechanical engineering. Most of Cheng's declaration was deemed inadmissible.

[4] Alberson expressed other opinions, to which evidentiary objections were sustained. We have not considered evidence the trial court ruled inadmissible in conducting our review.

4

customers, on the pole bases themselves, that failure to install the slip base within four inches of the ground line could interfere with the proper functioning of the breakaway safety feature.

Ameron filed a reply brief, arguing that any negligence in the design or manufacture of the light pole was "legally irrelevant" for purposes of the summary judgment motion. Ameron also submitted numerous objections to the declarations of Union Pacific's experts.

Following a hearing, the trial court granted the motion for summary judgment, stating that Union Pacific "failed to present admissible evidence that defendant Ameron was a substantial factor in causing [Katie's] injuries." The trial court also sustained most of Ameron's evidentiary objections.

Judgment was entered in Ameron's favor on October 16, 2018. This appeal timely followed.

## II. DISCUSSION

Union Pacific challenges the trial court's grant of summary judgment, including its subsidiary evidentiary rulings. We need not reach Union Pacific's claims of evidentiary error because, as we shall explain, Ameron failed to meet its initial burden of showing entitlement to judgment as a matter of law.

*A.    Summary Judgment Standards and Standard of Review*

" 'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Summary judgment is appropriate 'if all the papers submitted show that there is no trial issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]

"A defendant who moves for summary judgment or summary adjudication bears the initial burden to show that the action or cause of action has no merit—that is, 'that

5

one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.' [Citations.] When the burden of proof at trial will be on the plaintiff by a preponderance of the evidence, the moving defendant 'must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff "does not possess and cannot reasonably obtain, needed evidence" ' to support a necessary element of the cause of action. [Citations.]

"If the defendant fails to meet this initial burden, it is unnecessary to examine the plaintiff's opposing evidence; the motion must be denied. [Citation.] However, if the defendant makes a prima facie showing that justifies a judgment in its favor, the burden then shifts to the plaintiff to make a prima facie showing that there exists a triable issue of material fact. (*Aguilar, supra,* 25 Cal.4th at p. 850.) 'The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists, but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citation.]

"On appeal, we conduct a de novo review of the record to 'determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law.' [Citations.] We apply the same procedure used by the trial court: We examine the pleadings to ascertain the elements of the plaintiff's claim; the moving papers to determine whether the defendant has established facts justifying judgment in its favor; and, if the defendant did meet this burden, plaintiff's opposition to decide whether he or she has demonstrated the existence

6

of a triable issue of material fact." (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 804-806.)

B.    *The Trial Court Erred in Granting Summary Judgment Based on a Lack of Causation*

The trial court's summary judgment ruling rests on the absence of any triable issue of material fact as to whether Ameron was a substantial factor in causing Katie's injuries. Union Pacific challenges this ruling on two grounds. First, Union Pacific argues the trial court erred in finding that Ameron carried its initial burden of showing the nonexistence of any triable issue as to causation. Second, Union Pacific argues that even if Ameron's showing on causation was sufficient to shift the burden, the trial court erred in finding that Union Pacific failed to present sufficient facts to create the necessary triable issue. We need not reach the second contention, as we agree with the first.

"In a negligence action, the plaintiff must show the defendant's act or omission (breach of duty) was a cause of the plaintiff's injury." (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 288.) To prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the injury. (*Ibid.;* see also *Sandoval v. Bank of America* (2002) 94 Cal.App.4th 1378, 1385 [" 'In California, the causation element of negligence is satisfied when the plaintiff establishes (1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability' "].) Ameron's summary judgment argument focuses on cause-in-fact.

California has adopted the "substantial factor" test for cause in fact determinations. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1239.) Under that test, a defendant's conduct is a cause of a plaintiff's injury if: (1) the plaintiff would not have suffered the injury but for the defendant's conduct, or (2) the defendant's conduct was

7

one of multiple causes sufficient to cause the alleged harm. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969 ["The substantial factor standard . . . subsumes the 'but for' test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact"]; *Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049 [the "but for" test "should not be used when two 'causes concur to bring about an event and either one of them operating alone could have been sufficient to cause the result' "].)

The second amended complaint alleges that Katie was injured *both* as a result of being struck from behind by Brian, *and* as a result of colliding with Ameron's negligently designed and installed light pole. The second amended complaint alleges that Ameron "acted negligently or in strict liability as a supplier in the chain of commercial supply in the installation of the subject light pole *leading to and causing the injuries* alleged by [Katie]." These allegations frame the issues to be decided on summary judgment. (*Aguilar, supra*, 25 Cal.4th at p. 843.) Therefore, to be entitled to summary judgment based on a lack of causation, Ameron had to conclusively negate the allegation that the light pole was a cause-in-fact of Katie's injuries, or show that the element of causation cannot be established. (*Id.* at pp. 854-855.)

Ameron made no attempt to negate the allegation that the light pole was a cause-in-fact of Katie's injuries. Ameron offered no evidence that Katie's injuries would have been the same had the light pole functioned as intended. Instead, Ameron attempted to show that Katie could not prove causation. The essence of Ameron's argument in the trial court, and here, is that Katie will never be able to prove causation, as the undisputed evidence shows that the *accident* "would have happened anyway," whether or not the light pole was negligently designed or installed. Ameron's argument misstates the causation inquiry.

"In order for a plaintiff to satisfy the causation element of a negligence cause of action, he or she must show the defendant's act or omission was a substantial factor in

8

bringing about the plaintiff's harm." (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1104.) "In other words, [the] plaintiff must show some substantial link or nexus between omission and injury." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 779.) The causation inquiry thus focuses on the nexus between the defendant's conduct and the plaintiff's harm. (*Ibid.*; see also *Dixon v. City of Livermore* (2005) 127 Cal.App.4th 32, 42-43 [negligence cause of action requires a causal connection between the defendant's negligent acts or omissions and the plaintiff's injuries]; and see Rest.3d Torts, Liability for Physical and Emotional Harm, § 26, p. 346 ["Tortious conduct must be a factual cause of harm for liability to be imposed"].) The causation analysis does not require a nexus between the defendant's conduct and the accident that produces the harm, rather than the harm itself. That such a nexus may commonly occur does not mean that it is required.

*Doupnik v. General Motors Corp.* (1990) 225 Cal.App.3d 849 (*Doupnik*) illustrates the point. There, a negligent driver drove off the road and down an embankment. (*Id.* at p. 853.) The car overturned, coming to rest on its roof. (*Ibid.*) A manufacturing defect caused the roof to collapse, forcing the plaintiff's head backward over the top of the seat, resulting in quadriplegia. (*Ibid.*) A jury found the defect contributed to the plaintiff's injuries, and apportioned 20 percent fault to the defendant car manufacturer. (*Ibid.*) Another panel of this court affirmed. The court explained that, in crashworthiness cases, a car manufacturer may be liable for injuries sustained in a car accident where a defect, though not the cause of the accident, causes or contributes to the plaintiff's injuries. (*Id.* at pp. 858-859.) The court then turned to the question of concurrent causation, noting that the issue was whether the plaintiff's "negligence in driving off the road released forces sufficient to cause *only a defectively* welded roof pillar to collapse, forcing his head over the top of the seat, crushing his vertebrae and thereby causing quadriplegia." (*Id.* at p. 866.) The court concluded that the jury was properly instructed to "determine whether the defective roof pillar was a concurrent cause

9

of [the plaintiff's] injuries because it was 'operative at the moment of the injury and acted with another cause,' the forces unleashed by the accident, to collapse the roof." (*Ibid.*) The court found that substantial evidence supported the verdict, inasmuch as a reasonable inference could be drawn that the defect was a substantial factor in bringing about the plaintiff's injuries. (*Id.* at pp. 726-727.)

Likewise, in the present case, the second amended complaint, which is incorporated by reference in Union Pacific's cross-complaint, can be fairly read to allege that the collision with Brian and defective light pole were concurrent causes of Katie's injuries. Thus, the issue framed by the pleadings was whether the light pole was a substantial factor in causing harm to Katie. That the light pole was not the cause of the collision with Brian does not mean that the pole, in failing to break away, could not have contributed to Katie's injuries. Just as the evidence in *Doupnik* allowed the jury to infer that the plaintiff's negligence in driving off the road released forces that were sufficient to cause the defectively welded roof to collapse, so too does the second amended complaint encompass an argument that the collision with Brian released forces sufficient to cause all but a negligently designed light pole to break away.

Though Ameron may have demonstrated the absence of any triable issue of fact as to the cause of the collision with Brian, nothing in Ameron's separate statement of undisputed facts demonstrates that the light pole cannot be shown to have contributed to Katie's injuries. Because a prima facie showing that Ameron was not a cause in fact of the accident was not, in the circumstances of this case, tantamount to a showing that Ameron was not a cause in fact of Katie's injuries, we conclude that Ameron has failed to negate the element of causation, and therefore, failed to carry its initial burden of production on summary judgment. (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1310 ["Because Defendants have failed to establish every fact necessary to show the causes of action against them are without merit, they have failed to meet their initial burden and the motion must be denied"].) Having failed to address the

10

theory of causation set forth in the second amended complaint, Ameron failed to shift the burden to Union Pacific to come forward with evidence in opposition to the motion. (See *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534 ["if the showing by the defendant does not support judgment in his favor, the burden does not shift to the plaintiff and the motion must be denied without regard to the plaintiff's showing"].) For this reason alone, summary judgment should have been denied. (See *Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 945 [where, as here, the defendant's summary judgment motion did not negate all theories of liability and "the trial court should have held that [the defendant] failed to carry his initial burden and stopped there"].)

Ameron resists this conclusion, arguing that the rule of "but for" causation requires a causal nexus between the defendant's negligence, on the one hand, and the cause of the accident, on the other.[5] Ameron's argument derives from the following passage from Witkin: "The first element of legal cause is cause in fact: i.e., it is necessary to show that the defendant's negligence contributed in some way to the plaintiff's injury, so that 'but for' the defendant's negligence the injury would not have been sustained. *If the accident would have happened anyway, whether the defendant was negligent or not, then his or her negligence was not a cause in fact, and of course cannot be the legal or responsible cause*. The 'but for' rule has traditionally been applied to determine cause in fact." (6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1334, p. 631, emphasis added.) Ameron also directs our attention to *Arthur v. Santa Monica*

---

[5] The parties expend considerable energy advocating for different causation standards. As we shall discuss, Ameron argues the "but for" standard applies, and requires a showing that the "accident" would not have happened but for its negligence. Union Pacific argues that the "substantial factor" standard applies. We need not linger over this debate, as we conclude that Ameron failed to negate the element of causation, even under the "but for" standard it purports to apply.

*Dairy Co.* (1960) 183 Cal.App.2d 483 (*Arthur*) and *Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362 (*Toste*), both of which rely on the above-quoted language. Ameron invites us to view these authorities as standing for the proposition that a defendant's negligent conduct cannot be deemed to have caused the plaintiff's harm "if the accident would have happened anyway." Ameron's argument reads too much into the word "accident."

Ameron appears to assume that the "accident," in this case, was the initial collision with Brian, which would have occurred whether or not the light pole was defective−or even existed at all. But the word "accident" can also be understood to refer to an event that produces harm or the harm itself. (*Air France v. Saks* (1985) 470 U.S. 392, 399 [ "American jurisprudence has long recognized [a] distinction between an accident that is the *cause* of an injury and an injury that is itself an accident"].) This distinction informs our understanding of the quoted language from Witkin. When the word "accident" is understood to encompass both accidents that are the cause of injury and injuries that are themselves accidents, it becomes clear that the quoted language merely expresses the rule that defendants cannot be liable for negligence that does not cause harm. Nothing in Witkin suggests that the word "accident," as used here, was intended to express anything other than the usual rule. Certainly, nothing suggests that a negligent tortfeasor can escape liability on the grounds that another tortfeasor set in motion the chain reaction that culminated in the plaintiff's injury. (See *American Motorcycle Assn v. Superior Court* (1978) 20 Cal.3d 578, 586 ["Under well-established common law principles, a negligent tortfeasor is generally liable for all damage of which his negligence is *a* proximate cause . . . . A tortfeasor may not escape this responsibility simply because another act—either an 'innocent' occurrence such as an 'act of God' or other negligent conduct—may also have been a cause of the injury"].)

Neither *Arthur* nor *Toeste* convince us otherwise. In *Arthur*, the plaintiff was a passenger in a car that collided with the defendant's truck, which was illegally double-

parked on a city street. (*Arthur, supra,* 183 Cal.App.2d at pp. 484-485.) The collision occurred after the car's driver took his eyes off the road for a few seconds to look for a cigarette that had fallen to the floor. (*Id.* at pp. 485-486.) The trial court, sitting without a jury, found that the plaintiff failed to establish causation. (*Id.* at p. 484.) The court of appeal affirmed, holding that substantial evidence supported the trial court's finding as to causation because the evidence showed the car's driver "would have run into anything at that location, legally or illegally parked." (*Id.* at p. 487.) Relying on the above-referenced language from Witkin, the court concluded that defendant's negligence in double parking could not be said to have been the cause-in-fact of the accident. (*Id*. at p. 487, quoting 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 284, p. 1484.)

Ameron argues that summary judgment was appropriate under *Arthur*. Ameron observes that the present case is similar to *Arthur* in that Katie would have struck anything in her path. According to Ameron, the light pole, like the defendant's truck in *Arthur*, was merely the end point for Katie's out-of-control car, and cannot be said to have caused the accident, even assuming the pole was defective. However, we are concerned, not with the causal connection between the defective light pole and the collision with Brian, but rather, with the causal connection between the light pole and Katie's injuries. (*Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at p. 779.) Unlike *Arthur*, in which the court evidently believed the plaintiff's injuries would have been the same whether or not the defendant's truck was negligently parked, the allegation here is that Ameron's negligence made Katie's injuries worse. As we have discussed, Ameron has presented neither evidence nor inferences from evidence to show that Katie's injuries would have been the same had the light pole functioned as intended. Consequently, unlike the court in *Arthur*, we cannot say that Ameron's negligence was not a cause in fact of Katie's injuries. (See *Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1848 [distinguishing *Arthur* and reversing grant of defense summary judgment,

13

where, "it cannot be said that the decedent's injury would have happened as it did regardless of [the defendant's] negligence"].)

Ameron's reliance on *Toste* is similarly unavailing. In *Toste*, the plaintiff's father, a general contractor, was killed when a construction truck backed over him at a job site. (*Toste, supra,* 245 Cal.App.4th at p. 364.) The truck's driver, Michaelson, smoked marijuana two days earlier and had a high level of marijuana metabolite in his urine, in violation of federal safety regulations prohibiting marijuana use by truck drivers. (*Id.* at pp. 365, 357.) But several witnesses testified that they spoke with Michaelson before and after the accident and observed no signs of impairment. (*Id.* at p. 368.) Other witnesses testified that Michaelson checked his mirrors and backed up slowly, activating a backup alarm that could be heard as far as 200 feet away. (*Ibid.*) The evidence also showed that the decedent, who suffered from ongoing health problems and rarely visited job sites, had been standing in a blind spot behind the truck, in violation of his own safety rules. (*Id.* at pp. 368-369.) The jury, by special verdict, found that Michaelson was negligent, but his negligence was not a substantial factor in causing the fatality. (*Id.* at p. 364.) The court of appeal affirmed, relying on the above-referenced language from Witkin to conclude, "this accident would have happened whether or not defendant driver was under the influence of marijuana. Decedent was run over because he was just not paying attention to the hazards of the jobsite." (*Id.* at p. 370, quoting 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1185, p. 552.)

*Toste* and *Arthur* are similar in that both involved "accidents" that produced a single set of injuries, the nature and severity of which would have been the same regardless of the defendant's negligence. In this case, by contrast, the second amended complaint suggests that Katie suffered one set of injuries as a result of the collision with Brian, and an additional set of injuries as a result of the light pole's failure to break away. Although Ameron's negligence may not have caused the initial collision with Brian, we cannot say that Katie's injuries would have been the same had the light pole functioned

14

as intended.  Put another way, the accident might not have happened in the same way, in that Katie's injuries might have been prevented or lessened, but for Ameron's negligence.  (*Jackson v. Ryder Truck Rental, Inc., supra,* 16 Cal.App.4th at p. 1848.)  The trial court erred in granting summary judgment.

*C.       Reversal as to Nonappealing Parties*

Neither Katie nor Pacific Excavation opposed Ameron's motion for summary judgment, and neither has appealed from the trial court's ruling.  As a general rule, " 'where several persons are affected by a judgment, the reviewing court will make no determination detrimental to the rights of those who have not been brought into the appeal.' " (*Gonzalez v. R.J. Novick Construction Co.* (1978) 20 Cal.3d 798, 806; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeals, § 329, pp. 376-377.)   The rule is not inflexible, however.  (9 Witkin, Cal. Procedure, *supra,* Appeal, § 331, p. 380.)  "Where portions of a judgment adverse to a nonappealing party are inextricably interwoven with the whole judgment, a general reversal may be ordered to do complete justice."  (*Ibid.*; citing *Estate of McDill* (1975) 14 Cal.3d 831, 840; *Estate of Stauffer* (1956) 142 Cal.App.2d 35, 43; and *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1092.)  The criteria for that exception are present here, where the causation issues posed by the second amended complaint and cross-complaints are identical and inextricably interwoven.  Accordingly, we shall reverse the entire judgment.

15

## III.  DISPOSITION

The summary judgment is reversed.  Appellant Union Pacific Railroad Company shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

RENNER, J.


We concur:

/S/

BLEASE, Acting P. J.


/S/

MAURO, J.